POWELL, The (MAXWELL v.). See Case No. 9,324.

---

## Case No. 11,356.

**POWELL et ux. v. MONSON & BRIMFIELD MANUF'G CO.**

[3 Mason, 347.] [1]

Circuit Court, D. Massachusetts. May Term, 1824.

DOWER—HOW EXTINGUISHED IN MASSACHUSETTS—RELEASE—TRUST ESTATE—IMPROVEMENTS—INCREASE IN VALUE.

1. A bill in equity lies for dower. A deed of land executed by husband and wife, but containing no words of grant by the wife, does not convey her estate in the land, nor her dower.

[Cited in Bruce v. Wood, 1 Metc. (Mass.) 543; Chauvin v. Wagner, 18 Mo. 534; Flagg v. Bean. 25 N. H. 63. Cited in brief in Grant v. Parham. 15 Vt. 652. Cited in McFarland v. Fediger, 7 Ohio, 195; Smith v. Handy, 16 Ohio, 233. Cited in brief in Yocum v. Lovell, 111 Ill. 213.]

2. A release of dower, executed by the wife alone, long after the conveyance of the land by her husband, and for a new consideration, is not, in Massachusetts, an extinguishment of the dower.

[Cited in Lane v. Dolick. Case No. 8,049.]

[Disapproved in Albany Fire Ins. Co. v. Bay, 4 N. Y. 17. Cited in Dickinson v. McLane, 57 N. H. 32; Page v. Page, 6 Cush. 198; Teaff v. Hewitt, 1 Ohio St. 543.]

3. Semble, that an implied or express assent of the husband to the release, without joining in the deed, is not sufficient to give the release effect.

4. The parties to a deed are estopped to deny the consideration stated in it. But, it seems, another auxiliary consideration may be proved.

[Cited in Goward v. Waters, 98 Mass. 599; Livermore v. Aldrich, 5 Cush. 435.]

5. If a joint purchase be made in the name of one of the co-purchasers, parol evidence is admissible to prove the fact, and he will be held a trustee of a moiety for the other. Such a case is not within the statute of frauds, and is a resulting trust.

[Cited in Hoxie v. Carr, Case No. 6,802.]

[Cited in Bean v. Bean. 33 N. H. 284: Brooks v. Fowle, 14 N. H. 259; Depeyster v. Gould, 5 N. J. Eq. 480; Farrington v. Barr, 36 N.

---

[1] [Reported by William P. Mason, Esq.]

---

H. 88; Gove v. Lawrence. 26 N. H. 492; Hall v. Young, 37 N. H. 148; Hayward v. Cain. 110 Mass. 277; Hill v. McIntire, 39 N. H. 417; Page v. Page, 8 N. H. 195; Pembroke v. Allenstown, 21 N. H. 110; Tebbets v. Tilton, 31 N. H. 283.]

6. Dower is not allowable of an estate, of which the husband is trustee only.

[Cited in Prescott v. Walker, 16 N. H. 343.]

7. Where there have been improvements made upon an estate by the purchaser, dower is to be of the estate according to the value, which it would have had at the time of the assignment, if no such improvements had been made.

[Cited in Johnston v. Vandyke, Case No. 7,426; Thornburn v. Doscher. 32 Fed. 813.]

[Cited in brief in Hayden v. Weser, 1 D. C. 459. Cited in Smith v. Addleman, 5 Blackf. 408. Cited in note in Wilson v. Oatman. 2 Blackf. 226.]

8. Dower is to be according to an increase of value not arising from the improvements of the purchaser, but from the general growth of the country, or other general causes.

[Cited in Johnston v. Vandyke, Case No. 7,426; Thornburn v. Doscher, 32 Fed. 813.]

[Disapproved in Allen v. McCoy, 8 Ohio, 486; Cited in Baden v. McKenny, 18 D. C. 272; Dunseth v. Bank of U. S., 6 Ohio, 79; Quick v. Brenner, 101 Ind. 237; Sturtevant v. Phelps, 16 Gray, 52. Cited in brief in Tod v. Baylor, 4 Leigh, 506.]

[9. Cited in brief in Lyman v. Gedney, 114 Ill. 393. to the point that possibility of dower in land is not an incumbrance.]

[10. Disapproved in Fitts v. Hortt, 17 N. H. 534. and Fletcher v. State Capital Bank, 37 N. H. 396, to the point that an inchoate right of dower is not an incumbrance. within the meaning of a covenant against incumbrances.]

This was a bill in equity, brought by the plaintiffs, Ellick Powell and Elizabeth, his wife, praying for an assignment of her dower, in certain lands. now owned by the defendants, and which formerly belonged to one Roswell Merrick, the former husband of the said Elizabeth. The defendants resisted the claim, upon the ground, that the said Elizabeth had legally relinquished and conveyed away her dower in the several parcels of lands described in the bill, by good and sufficient instruments, and that the same are now held by the defendants, free from such incumbrance.

George Blake, Dist. Atty., and Mr. Blair, for plaintiffs.

Mr. Prescott, for defendants.

STORY, Circuit Justice. This is a bill in equity, for an assignment of dower. I pass over, without observation, any defects in the bill and answers. which might raise a question as to the sufficiency and accuracy of the proceedings, because I understand it to be the wish of all the parties to have the case finally adjudged upon the merits, as they have been stated and relied on at the argument. There are various parcels of land, of which dower is claimed, and it is conceded on all sides, that as to one parcel. designated as lot No. 7, which was conveyed in 1812 by Lavina Utley to Roswell Merrick (the former husband of Mrs. Powell.) to some extent, she

is entitled to dower. It is unnecessary to take any farther notice of this part of the case at present, because it is understood, that the parties can ascertain the portion subjected to her claim, by an amicable arrangement.

The principal points arising in the case depend upon local law, and are involved in some obscurity. I would gladly follow the doctrine of the supreme court of the state, if any case had completely decided them. But, unfortunately for the cause, some of the points have never undergone any direct adjudication, and the court is left to grapple as it may with the difficulties presented by a new posture of facts, and with very imperfect lights to direct it.

The first question arises in respect to a parcel of land conveyed by Thomas Riddle to the husband of Mrs. Powell, in 1808. Riddle was seized of the land in right of his wife, who was owner of the fee, and she has signed and sealed the deed, but the husband alone is named as grantor in the deed, and there are no words in the body of the deed, containing a grant or release on her part. Under these circumstances, it is very clear, that nothing passed by the deed but the life estate of Riddle; for, though by our local law, a wife, by joining with her husband in the deed, may convey her estate, yet the deed must contain apt words to make her a grantor, otherwise the deed conveys only the right of the husband. This point has been expressly decided by the supreme court of the state (Fowler v. Shearer, 7 Mass. 14; Lithgow v. Kavenagh, 9 Mass. 161; Catlin v. Ware, Id. 218; Lufkin v. Curtis, 13 Mass. 223), and in my humble judgment, with entire correctness. We may then dismiss any farther consideration of this point.

The next question in the case turns upon the same principle. Mrs. Powell signed and sealed certain deeds executed by her late husband, conveying certain parcels of the demanded premises in fee, but no words of relinquishment of her dower, or any other interest, are found in the deeds. The case, therefore, is precisely that of Catlin v. Ware, 9 Mass. 218, and Lufkin v. Curtis, 13 Mass. 223, where the court held, that the deeds did not bar the wife of her dower, upon the plain reason that a deed cannot bind a party sealing it, unless it contains words expressive of an intention to be bound.

The most important question in the case remains to be considered; and in order to present it with accuracy, it is necessary to state the leading facts. Mr. Merrick (the late husband of Mrs. Powell) being seized in fee of a number of parcels of land (embracing the principal closes now in controversy), in common with two other persons, by deed, dated the 10th of January, 1816, conveyed the same for the asserted consideration of $50,000 to the Union Cotton Manufacturing Company, since, as it is admitted, known by the corporate name of the Monson & Brimfield Manufacturing Company, with covenants of sei-

sin, and against incumbrances, and of general warranty. To this deed Mrs. Powell is not a party. Subsequently, on the 2d of April, 1816, the Union Cotton Manufacturing Company, for the asserted consideration of $20,000, duly conveyed the same lands to one Henry Mellen in fee. On the 26th of August of the same year, Mellen, for the like consideration, duly conveyed the same land back to the company. On the same day Mrs. Powell, and Mrs. Pearce (the wife of one of the co-grantors with Merrick) signed, sealed, and executed on the back of the original deed of the 10th of January, 1816, an instrument in the following words. "Monson, August 26th, 1816. In consideration of two hundred dollars to us paid by the Union Cotton Manufacturing Company, we, Elizabeth Merrick and Lucretia Pearce, relinquish and quitclaim all our right, title, and interest of dower, to the within described premises." Then follow their signatures and seals, with an attestation of two witnesses. The execution of the instrument is proved by one of the attesting witnesses, who states, that Mr. Merrick, sometime before, requested him to take the deed to his wife, and obtain her release; that he did not pay any money to the releasors; that the instrument was read over to them, and they were requested to sign it, and it was stated to them to be necessary in order to complete the title; and that it was understood, when the deed itself was originally executed, that they should become parties to it. To this instrument, as a sufficient release, several objections have been taken on behalf of the plaintiffs. First, it is said, that there is no grantee named in the deed, and therefore it cannot operate as a release. But the consideration is admitted in the deed to be paid by the company; and therefore, however inartificially drawn, the deed must be construed as a release to the company. Next, it is said, that it is not proved, that the company was then in possession of the land, because they had parted with the title to Mellen, and though his deed was executed on the same day, non constat, that it was prior in point of execution, so as to revest the fee. But to this it is a sufficient answer, that the court, in order to give validity to the deed, is bound to presume the prior execution of the conveyance of Mellen, as best agreeing with the acts of the parties; and, what is not unimportant, the release being for a valuable consideration, which the releasors are estopped by their deed to deny, it might, if necessary, be made to operate as a bargain and sale, in order to effectuate the intention of the parties. See Shove v. Pincke, 5 Term R. 124; Coventry v. Coventry, 1 Strange, 596; Jackson v Fish, 10 Johns. 456; Marshall v. Fisk, 6 Mass. 24, 32; Gibson v. Minet, 1 H. Bl. 614, 615, per Eyre. C. J.

The great objection, and which presses heavily on the cause, is, that the deed itself is utterly void for want of the husband's being joined in it. At the common law the

deed of a married woman is ipso facto void, and she is incapable of passing her estate, except by fine, or some other equivalent act of record. But in Massachusetts, from the earliest times, a different rule has prevailed. Fines, as conveyances, have never been in use in this state; and the doctrine is established, that a married woman may convey her estate, and extinguish her dower, by joining her husband in the deed of conveyance. When this doctrine was first adopted, it is not now possible to ascertain with entire certainty; and by some of our ablest lawyers and judges, it has been resolved into New England common law. It is not improbable, that it took its rise from the colonial act of 1644, which secured to the wife her dower, unless barred "by some act or consent of such wife, signified by writing under her hand, and acknowledged before some magistrate or others, authorized thereto." Colon. & Prov. Laws (Ed. 1814) p. 99, c. 37; Doe v. Salkeld, Willes, 673. After the charter of William and Mary, the provincial act of 9 Wm. c. 7, —Colon. & Prov. Laws (Ed. 1814) p. 308, c. 48 (1697),—for registering of deeds and conveyances, may be thought to have recognized the validity of this mode of releasing dower, by providing, "that nothing in this act shall be construed, deemed, or extended, to bar any widow of any vendor, or mortgagor, of lands or tenements from her dower, or right in or to such lands or tenements, who did legally join with her husband in such sale or mortgage, or otherwise lawfully bar or exclude herself from such her dower or right." This provision has been in terms incorporated into our statute of 1783. c. 37 (1 St. Mass., Ed. 1823, p. 111), respecting conveyances of real estate, and constitutes a part of the existing law upon the subject. But as the clauses, with the exception of the words "vendor" and "sale," is a mere transcript of a proviso in the English statute of 4 & 5 Wm. & M. c. 16, § 5, passed only five years before, to prevent frauds by clandestine mortgages, it is to be considered as referring, not so much to any local mode of barring the wife's estate, as to the extinguishment of her dower in any legal manner whatsoever.

The construction put upon the last words of the clause, "or otherwise lawfully bar or exclude herself from such dower," has never been, that it let in any usage, or practice, not consonant with the principles of the common law. On the contrary, it has, as far at least as decisions have gone, been always limited to such bars of dower, as were recognized by the common law. Chief Justice Parsons, (and no man was better acquainted with our local law,) in commenting on this very proviso in Fowler v. Shearer, 7 Mass. 14, 20, plainly understands the words in this sense. His language is, "when therefore the widow is not barred by a jointure. and does not join with her husband in the sale, she shall have her dower." The question, therefore, is narrowed down to the interpretation of the other

words of the clause, or what is a joining with her husband in the sale, within the sense of the statute. Now, we have the exposition of the same learned judge upon this part of the statute in the same case. "The usual mode," says he, "by which a wife is joined, is by introducing her in the close of the deed, as expressly relinquishing all claim to dower in the premises sold, and by executing the deed with her husband." This is perfectly plain and unambiguous. But he adds, "and has been sometimes done by her separate deed, subsequent to her husband's sale, in which the sale is recited as a consideration, on which she relinquishes her claim to dower." It is this sentence, which creates the whole difficulty in the argument at the bar. If it means, that it may be done by a separate deed of the wife, executed after the deed of her husband, but on the same day, or as a part of the same transaction, then there is no difficulty in reconciling it with the language of the statute, for the wife may be truly said to join in the sale, when she is a party to it, at the time when it is made, whether she join in her husband's deed, or execute a separate deed. And the words of the learned judge are not inconsistent with this construction. Although he speaks of a separate deed of the wife, subsequent to the sale by her husband, this may well be limited to mean, that the husband's act of sale must have a legal priority to satisfy the words of the statute. And the words, "in which the sale is recited as a consideration," favour the notion, that the learned judge had in view such cases only, in which the sale was the moving consideration, and the act was part of the res gestæ,—in the contemplation of all parties. But the argument at the bar assumes a much broader construction, and asserts, that the words are intended to include all cases of the subsequent execution of a separate deed, at however distant a period, where the assent of the husband may be presumed, and there is, in fact, no other consideration, but what passed originally to the husband. If this be so, then the departure from the language, and apparent intent of the statute is very striking; and it ought to be justified by some usage so extensive and so fully recognized, as to have become a part of the law. Now the learned judge himself asserts no such fact; his language is, "it has been sometimes done," not that it is commonly done, or has been received as a legitimate mode of conveyance, by the general practice and sense of the profession. If mere irregularities, even to a great extent, could make or change the law, the deeds of femes covert joining with their husbands in the execution of the deeds, but without any words of release to bind them, would have been held as a bar; for the practice is shown to have been very extensive and ancient in the western part of the state. And yet the court did not hesitate to overrule it. as founded in a clear mistake of law. But if we assume the broad-

est construction of the language in Fowler v. Shearer, it does not come up to the present case. If it did, though I might hesitate as to its being a just interpretation of the words of the statute, I should not scruple to follow it, until an opportunity was given to the state court itself to reconsider and examine the extent of that dictum, in a case directly bringing it in judgment. But the present case falls far short of it. Here, the deed is executed after the lapse of seven months, and after two intermediate conveyances, upon a new consideration, not in the original deed, and not reciting the original sale as the leading consideration. So that the court is called upon, not only to desert the plain import of the statute, but to take a new course, which shall remove the limitations hitherto affixed to the departure.

First, it is argued, that it is sufficient to satisfy the statute, that there is an assent of the husband to the deed, and that assent may be implied, as well as expressed by his joining in the conveyance. Now, how does this stand with the text of the statute? It is nowhere said, that the wife shall be barred of dower, if she releases with the consent of the husband; the words of the statute are, that she shall not be barred if she "did not join with her husband" in the sale. It is his sale, therefore, in which she is to join, and not her subsequent deed, to which he is to assent, that constitutes the bar.

Then, again, as to the assent of the husband. It is inferred, from the fact of a full consideration paid upon the sale, and the covenant against incumbrances, and especially against dower, and the covenant of general warranty in the deed. But it is too much to infer from these facts any intention or contract, to procure the wife to release her dower. Creditors often take deeds of this sort without any notion, that the dower is to be relinquished; and though cases may not be very frequent, in which upon a fair purchase, this possible incumbrance is not stipulated to be released, yet it is within the experience of all of us, that cases of this sort do arise, and the title is thought worth the purchase. Nor am I prepared to admit the doctrine contended for at the bar, that a covenant against incumbrances is broken by the mere existence of a possible incumbrance; and that, therefore, every deed containing such a covenant imports a contract to procure its extinguishment. A possibility of dower is not, within the sense of the covenant, an incumbrance, for that means a settled, fixed incumbrance; and if the result of the Massachusetts authorities on this point has not been mistaken by me, taking them collectively, they do not sustain the doctrine now contended for. See Marston v. Hobbs, 2 Mass. 433; Bickford v. Page, Id. 455, 461. But it may be urged, that the parol proof helps this presumption, by its direct and positive declarations. And so it would, if it stood alone. But here, if it was originally designed, that the wife should execute a release of dower, why was not her name inserted in the deed? Why was no conveyance written or insisted on for seven months, or until two mesne conveyances? Why, if she originally agreed to join in the sale, for that is the material fact, why was it necessary to employ a person to explain the nature of the title to her, or to persuade her to execute the release under the suggestion, that her husband wished her so to do? Why was not the husband present at the execution of the deed, and himself made the medium of explanation to his wife? It appears to me, that these questions are not easily or satisfactorily answered by the circumstances now in evidence. For aught that appears, the original consideration was fully paid before the release of dower was demanded. There is another fact bearing upon this point. I mean the alleged consideration of $200 paid for the release. It is said, that this was never paid; but can the parties be let in by parol evidence to contradict the admission in their own instruments of title? And if they could be so let in, still does not the insertion of a new consideration in the release repel the presumption, that the original sale was understood by the parties to include a relinquishment by the wife of her right to dower? It appears to me, that it would be extremely dangerous to bolster up imperfect instruments in this way, by conjectures and inferences, and parol evidence, standing in the way of the written acknowledgment of the parties. The cases cited at the bar to show that the consent of the husband is equivalent to joining in certain acts of his wife, to give them validity at the common law, are inapplicable. They turn upon principles or practices in peculiar and limited proceedings, and not upon the construction of a statute. Portington's Case, in 10 Coke, 36, 43, decides only, that a fine, levied by a feme covert, shall bind her and her heirs, if her husband doth not enter and avoid the estate of the conusee; and the reason given is, because she is examined in court, and has a power over the land. The court went no further in Moreau's Case, 2 W. Bl. 1205, than to suffer a fine to be levied by his wife, when the husband was abroad, and had covenanted, that such a fine should be levied. Compton v. Collinson, in 1 H. Bl. 334, adjudged, that the wife may surrender her copyhold without the husband's joining, where he had covenanted under articles of separation, that she should enjoy all her estate during coverture to her separate use. It is sufficient to say, that the present is not the case of a fine or surrender, but an act, which, at the common law, would be held utterly void; and is supported only by the authority of our statute, and local usage.

But if the objection, as to the consent of the husband, was wholly removed, still there is the lack of the ingredient mentioned by the chief justice in Fowler v. Shearer, that there should be a recital in the separate deed of the wife, that the release is in consideration

of the sale. This is not a merely formal clause, but is introduced as the record proof, that she joins in the sale with her husband, so as to bring the case within the proviso of the statute, such a recital being conclusive of such a joinder. But it is said, that in point of fact the consideration of $200 was not paid, although so stated in the release; and, at all events, parol evidence is admissible, to show the auxiliary and real consideration. It appears to me, that in this case, the parties are not at liberty to deny, that the consideration money stated in the deed was actually paid, or constituted the foundation of the release. Parol evidence is generally inadmissible, to contradict the statements contained in a deed; and this very point, as to the consideration, has been directly adjudged to fall within the rule. Shep. Touch. 222, 510; Wilkes v. Leuson, Dyer, 169a; Fisher v. Smith, Moore, 569; Smith & Lane's Case, 1 Leon. 170; Mildmay's Case, 1 Coke, 176; Bac. Abr. "Bargain and Sale," D; Lord Cromwel's Case, 2 Coke, 70; Bedell's Case, 7 Coke, 40; Com. Dig. "Bargain and Sale," B, 11; Wilt v. Franklin, 1 Bin. 502; Doe v. Salkeld, Willes, 673; Stevens v. Cooper, 1 Johns. Ch. 425; Botsford v. Burr, 2 Johns. Ch. 405, 415.

Indeed, in some cases, a distinction prevailed, that excluded all parol evidence to establish any consideration consistent with, but additional to that expressed in the deed, unless in cases where the deed purported also to be for other considerations. Lord Hardwicke, in Peacock v. Monk, 1 Ves. 130, recognized that distinction. In that case, evidence was offered of a consideration aliunde the deed. His lordship admitted it, because there was no consideration expressed in the deed, saying, "To be sure, where any consideration is mentioned, as love and affection only, if it is not said also, and for other considerations, you cannot enter into proof of any other; the reason is, because it would be contrary to the deed, for when the deed says it is in consideration of such a particular thing, that imports the whole consideration, and is negative to any other. But this is a middle case, there being no consideration at all in the deed." The master of the rolls, in Clarkson v. Hanway, 2 P. Wms. 203, manifestly inclined to the same opinion. Sheppard's Touchstone (Shep. Touch. 222, 510) contains the elements of a like distinction; and it has been enforced on various occasions by the supreme court of New York, without hesitation (Howes v. Barker, 3 Johns. 506; Schermerhorn v. Vanderheyden, 1 Johns. 139; Maigley v. Hauer, 7 Johns. 341). The solid influence of these authorities cannot be overlooked; and if they stood alone, they would be decisive. But they are encountered by weighty opinions in an opposite direction. The point arose in Villers v. Beamont, 2 Dyer, 146, and was decided in favour of the admission of the parol evidence, notwithstanding the omission in the deed of other considerations, by three judges against one. The correctness of that decision was

recognised in Bedell's Case, 7 Coke, 40, and in Vernon's Case, 4 Coke, 3. Lord Chief Justice Willes has given it the sanction of his own great authority in Doe v. Salkeld, Willes, 673, and Lord Kenyon and the court of king's bench acted upon it in King v. Inhabitants of Scammonden, 3 Term R. 474. The preponderance of authority is, therefore, perhaps, in favour of the admissibility of the evidence. Assuming it to be so, still as the parties are estopped to deny the consideration stated in the deed, the prior sale cannot be admitted to be the sole consideration. How then can the release be deemed a joining in the original sale, since it stands on the footing of a new auxiliary consideration? How can we infer, that it was a part of the original contract of sale, when it purports to be a distinct transaction? There is no parol proof of any admission by the wife, that she originally agreed to join in the sale. The whole inference rests upon the fact, that she agreed in August to execute the deed, upon being told by a witness, that it was necessary to complete the title.

I confess myself unwilling to take another step, involving a plain departure from the language of the statute; and the danger of admitting parol proof to support the infirmity of deeds is a good deal strengthened by the knowledge that married women are not often sufficiently well acquainted with the practical business of life, to guard themselves from mistake or imposition. If the supreme court of the state had sustained such a release, I should have followed them upon a point of local law. As they have not, I stand upon the text of the statute.

But it is urged, that this is a case in equity, and that the court will grant great indulgences to the imperfect acts of parties to sustain their intentions; and that it will not lend its aid to enforce any inequitable claim. But in a case like the present, equity necessarily follows the law. The parties stand upon their legal rights, and what is not a bar of dower at law ought not, under the circumstances of the case, to be held a bar in equity. Here, no fraud or imposition is set up. The case stands upon its naked rights; and the relief asked, is not rebutted by any counter equity against Mrs. Powell.

Another question, of a different sort, arises from the following transaction. In July, 1813, David L. Shields conveyed to Roswell Merrick, in fee, a lot of four acres, for the consideration of $120. At the time of the purchase, Merrick was in partnership with one George N. Pearse, under the firm of Merrick, Pearse & Co. Merrick gave his own note for the purchase money, but it was paid out of the partnership fund. Immediately after the purchase, the lot was divided, and Merrick occupied and built a house upon the southern half; and his possession remained ever afterwards several and exclusive in the premises. The firm became insolvent in 1816, and Pearse then absconded, and being in bad

habits, he enlisted in the army, and has never since been heard of; and his papers have been lost or destroyed. There is no positive proof, that any conveyance was ever made of the northern half by Merrick to Pearse. But the answer (after disclaiming on the part of the defendants any interest in the southern half,) sets up the purchase as an original purchase,* jointly for account of Merrick & Pearse, and that therefore there was a resulting trust in the one half for the use of Pearse, so that Mrs. Powell is not dowable of it, it being a mere trust estate in her husband. Supposing parol evidence to be admissible to prove the joint purchase, it appears to me, that the fact is made out in the most satisfactory manner. The original bargain is stated by the vendor, to have been made by both partners, and admitted by them to have been on joint account, and the consideration was paid out of the joint funds.

The objection taken at the bar is, that parol evidence is not admissible to establish the trust, because it trenches upon the statute of frauds of Massachusetts. That statute (Act 1783, c. 37, § 3) is, on this subject, in substance a transcript of the statute of 29 Car. II. c. 3, and excepts from its operation any conveyance, "by which a trust or confidence shall or may result by the implication or construction of law, or be transferred or extinguished by an act or operation of law."

The objection is certainly not without countenance from highly respectable elementary writers. Mr. Roberts (1 Rob. Frauds, c. 2, p. 95, note 39) and Mr. Saunders (Saunders' note to Lloyd v. Spillet, 2 Atk. 150; Saund. Uses, p. 212, c. 3, § 5) appear to have been strongly impressed with the notion of the general inadmissibility of parol evidence to raise a trust in cases of this nature. The latter contends, that, at all events, it is inadmissible after the death of the nominal purchaser. And Mr. Sugden (Sugd. Vend. 414), although he is in favour of its admissibility generally, doubts if it can be admitted, where the answer of the supposed trustee denies this trust.

The general principle has long since been settled in equity, that if one person purchase land in the name of another, the latter, the deed being taken in his name, shall, without any declaration in writing, be held a trustee of the former. The ground of this doctrine is, that he, who pays the consideration, is to be deemed the owner of the land in equity, unless other presumptions arise (as may from the consanguinity of the parties) to repel the conclusion. And it was decided in a very short time after the passing of the statute of frauds of 29 Car. II., in an anonymous case in 2 Vent. 361, that this was a resulting trust, and not within the purview of that statute. The doctrine of this case has never been departed from, but has been recognized in a great variety of decisions. Ambrose v. Ambrose, 1 P. Wms. 322; Kirk v. Webb, Finch, Prec. 84; Ex parte Vernon,

2 P. Wms. 549; O'Hara v. O'Neil, 21 Vin. Abr. "Trust," E, pl. 6, note; Pelly v. Maddin, Id. pl. 15; Smith v. Baker, 1 Atk. 385; Ryall v. Ryall, Id. 59, Amb. 413; 1 Eq. Cas. Abr. p. 232, § 7; Lane v. Dighton, Amb. 409; Withers v. Withers, Id. 151; Smith v. Lord Camelford, 2 Ves. Jr. 699, 713; Lloyd v. Spillet, 2 Atk. 150; Willis v. Willis, Id. 71; Lever v. Andrews, 7 Brown, Parl. Cas. (Tomlin's Ed.) 288; Knight v. Pechey, 1 Dickens, 327; Bartlett v. Pickersgill, 4 East, 577, note; Id., 1 Eden, 515; 1 Cox, Ch. 15; 2 Fonbl. Eq. p. 116, c. 5, § 1, and note; Rider v. Kidder, 10 Ves. 360; Young v. Peachy, 2 Atk. 256; Crop v. Norton, Id. 74, 9 Mod. 233; Finch v. Finch, 15 Ves. 50; Bac. Abr. "Uses and Trusts," I, c. 3; Woodeson, 439. But the point, whether proof of such a purchase could be made out by evidence aliunde the deed, or other written evidence, or in other words, whether parol evidence is admissible to establish the manner of paying the purchase money, has been involved in some doubt. Some of the earlier cases, such as Kirk v. Webb, Finch, Prec. 84, Newton v. Preston, Id. 103, and Skett v. Whitmore, Freem. Ch. 280, appear rather to lean against it. But the more recent authorities have gradually settled in its favour. On the present occasion I have examined the subject at large, and am not aware, that any important case has escaped my researches. The result of that examination is, that the question is no longer fairly open to debate; and whatever difficulty I should have had in the first instance in adopting the rule, it appears to me now firmly established, that parol evidence is admissible to ascertain the trust. I should have gone somewhat into a commentary upon the leading cases, tracing them in their historical order, if that excellent and laborious Judge, Mr. Chancellor Kent, had not, in two recent cases, Boyd v. McLean, 1 Johns. Ch. 582, and Botsford v. Burr, 2 Johns. Ch. 405, —with great care and accuracy, collected and reviewed them. I have followed in his path, and find nothing to subtract from, and nothing to add to, what he has stated as the result of his investigation, with which my own entirely coincides. The same doctrine has been maintained on various occasions by the supreme court of New York (Jackson v. Sternbergh, 1 Johns. Cas. 153; Foote v. Colvin, 3 Johns. 216; Steere v. Steere, 5 Johns. Ch. 1, 19; Jackson v. Matsdorf, 11 Johns. 91; Jackson v. Morse, 16 Johns. 197; Jackson v. Mills, 13 Johns. 463) and of Pennsylvania (Lessee of German v. Gabbald, 3 Bin. 302; Gregory's Lessee v. Setter, 1 Dall. [1 U. S.] 193); and although there is a dictum in the case of Northampton Bank v. Whiting, 12 Mass. 106, 109, which appears to limit the rule to the admission of parol evidence, where it is not inconsistent with the deed, that is, where the consideration is not stated in the deed to have been paid by the nominal purchasers, I persuade myself, that if all the authorities had been brought under the re-

view of the court, the general conclusion would not have differed from that of Mr. Chancellor Kent (see Gascoigne v. Thwing, 1 Vern. 366, 1 Eq. Cas. Abr. 232; Willis v. Willis, 2 Atk. 71; Knight v. Pechey, 1 Dickens, 327; Bartlett v. Pickersgill, 4 East. 577, note, 1 Eden. 515; 1 Cox, Ch. 15; Ryall v. Ryall, 1 Atk. 59; Lane v. Dighton, Amb. 409; Ex parte Vernon, 2 P. Wms. 549; Sowden v. Sowden, 1 Brown, Ch. 582; Rider v. Kidder, 10 Ves. 360; Lench v. Lench, Id. 511; Finch v. Finch, 15 Ves. 50; Mackreth v. Symmons, Id. 350; Wray v. Steele, 2 Ves. & B. 388; Taylor v. Plumer, 3 Maule & S. 562, 579; 3 Woodes, 459). The latest English authorities seem to leave the point entirely at rest; and I have not the courage to undertake to disturb it.

Supposing this point out of the case, there is another connected with it, that requires observation; and that is, whether the doctrine, however true as to an entire, applies to a joint-purchase. Lord Hardwicke is represented in Crop v. Norton, reported in 2 Atk. 74, and more fully if not more accurately in 9 Mod. 233, to have said: "Where a purchase is made, and the purchase money is paid by one, and the conveyance taken in the name of another, there is a resulting trust for the person, who paid the consideration; but this is, where the whole consideration moved from such person; but I never knew it, where the consideration moved from several persons, for this would introduce all the mischiefs, which the statute of frauds was intended to prevent. Suppose several persons agree to purchase an estate in the name of one, and the purchase money appears by the deed to be paid by him only, I do not know any case, where such persons shall come into this court and say, they paid the purchase money; but it is expected there should be a declaration of trust."

In Wray v. Steele, 2 Ves. & B. 389, the vice chancellor said: "Lord Hardwicke could not have used the language ascribed to him. What is there applicable to an advance by a single individual, that is not equally applicable to a joint advance under similar circumstances?" And in that case, which was of a joint purchase in the name of one, he overruled the distinction, and decreed in favour of the trust. I follow this authority, from the persuasion, that it is perfectly within the principle of the general doctrine.

The remaining inquiry under this head is, it being established, that this was a joint purchase, in trust as to the northern half for Pearse, whether dower lies of such an estate in favour of the wife of the trustee. In Noel v. Jevon, Freem. Ch. 43, that point was decided against the right of dower, notwithstanding the opinion in Nash v. Preston, Cro. Car. 191; and it was then said to be the constant practice of the court. See, also, Rop. Husb. & Wife, p. 353; Bevant v. Pope, Freem. Ch. 71; Contra, 1 Rolle, Abr.

p. 678, pl. 36. This was a suit in equity, and would be decisive in this court, whatever might be the course of proceeding in a court of law; though I presume even at law in Massachusetts, there being no state court of equity, the doctrine would be fully recognised. Upon the whole, upon this point, my opinion is, that Mrs. Powell has no claim of dower in the northern half of the four acre lot.

There is another question of great practical importance in all cases of this nature; I mean, whether dower is to be assigned to the widow according to the value at the time of the alienation of her husband, or at the time of the assignment of the dower. This is a point, upon which there has been a good deal of argument at the bar, and upon which the American authorities are not agreed. It is necessary, therefore, to give it a fuller discussion, than might otherwise seem necessary.

In Co. Litt. 32a, it is laid down, "that if the wife be entitled to have dower of 3 acres of marsh, every acre of the value of 12 pence, and the heir, by his industry and charge, maketh it good meadow, every acre of the value of 10 shillings, the wife shall have her dower of the improved value, and not according to the value as it was in the husband's time; for her title is to the quantity of the land, viz. one just third part. And the like law it is, if the heir improve the value of the land by building; and on the other side, if the value be impaired in the time of the heir, she shall be endowed according to the value at the time of the assignment, and not according to the value in the time of her husband." The learned author quotes no authority for these positions, except a case in 30 Edw. I., reported in Fitzh. Abr. tit. "Voucher," 298. The report is very short and obscure, but it seems to have been a case of dower, where the widow demanded a place, which, at the time her husband sold it, was without a dwelling-house; but she demanded dower of the one third of the messuage, or of the value, against the heir, who was vouched. The case was put, if the husband sells a site, and afterwards the purchaser builds a castle on it, whether she should have dower of the third part of the castle, and it was denied. And thereupon it is said, that by the award of the court she recover the third part of the place (de la place). Mr. Hargrave gives from the manuscripts of Lord Hale the following note on the passage (note 193): "Vide 1 Hen. V. 11; 17 Edw. III. If feoffee improves by building, yet dower shall be as it was in the seizin of the husband. 17 Hen. III. 'Dower,' 92; 31 Edw. I. 'Voucher,' 288. For the heir is not bound to warrant, except according to the value as it was at the time of the feoffment, and so the wife would recover more against the feoffee, than he could recover in value, which is not reasonable." The case 1 Hen. V., 11, does not

appear to me, on examining it in the Year Books, to have any application. The principal point there litigated was upon special pleading, the widow demanding dower of two mills, and the tenant pleading in abatement, that at the purchase of the mill, it was two tofts only, on which the parties were at issue. The citation 17 Edw. III. has escaped my researches. The case of 17 Hen. III. is taken from the report in Fitzh. Abr. tit. "Dower," 192; and that of 31 Edw. I. from the same work, tit. "Voucher," 288. The former stands thus: "E., who was the wife of R., demands one third part of three acres of land with the appurtenances in E., as her dower, against W. And W. comes and says, that he bought the land of her husband, naked and unbuilt upon, and he built upon it; and he willingly allows to her her third part, saving the buildings to himself. And, therefore, she had her seizin, saving to the said W. the houses built by him, &c., because he had, without the buildings, where she might have her land &c." The other stands thus: "Dower and demand of the third part of a mill, and the tenant vouches, and the vouchee comes and demands what he had to bind him, and the tenant shows a charter conveying a certain place; upon which the voucher demands judgment, if he ought to warrant; the tenant says, that after the gift he built a mill; judgment if of such he ought not to be warranted; and the case was, that in the seizin of the husband the place was but a vacant place. Herle. He might have abated the writ. Hingham. You ought to have discovered the matter when you vouched, and it was not done, for which award, &c." These cases seem in substance to support Lord Hale's position, and establish a distinction between the case of the heir, and a purchaser, in favour of the latter. Perkins (Dower, § 328; Bac. Abr. "Dower," B, 5) recognises the distinction, and puts the case, where there are buildings on the land at the time of the alienation of the husband, and afterwards during the life of the husband, the feoffee pulls down the buildings; and he holds, that the wife shall, in such case, have dower only according to the value of the land as it was at the death of her husband; and he doubts, if she has any remedy for the taking away of the buildings, because her title to dower is not consummate before his death. Perk. Dower, § 329. It has been said in some modern cases (Thompson v. Morrow, 5 Serg. & R. 289, 291) that the reason why, when the heir builds upon, or otherwise improves the estate, the widow shall have her dower of the improvements, is, because it is his folly to make the improvements before assigning her dower. This may be the true reason; but neither my Lord Coke, nor, as far as I can trace, do any of the old authorities assign this as the ground of the rule. And if it be, how does it happen that if the heir impairs the value, still her dower is only of the value

at the time of the assignment, thus permitting him to derive benefit from his folly or his wrong. If I were allowed to hazard a conjecture, it would be, that the rule proceeded upon grounds somewhat more artificial and technical. In case of a disseisin, if the disseisor build upon the land, which he hath by disseisin, and the disseisee afterwards enter, the latter shall have the buildings as well as the land. The reason is, that the title and seizin of the soil, upon recovery by the common law, carry every thing annexed to the freehold as an incident; "cujus est solum, ejus est usque ad coelum." The title to dower is consummate, by the husband's death, of all things of which he had a seizin, and which were then in existence. The tenant in dower, therefore, like any other tenant of the freehold, takes upon a recovery whatever is then annexed to the freehold, whether it be so by folly, by mistake, or by the purest innocence. If a recovery be upon a title paramount against any person, though he may be a bona fide purchaser, and have made improvements on the land, yet the common law gives the demandant a perfect title to all the improvements, as well as to the land. And if, in the hands of such a purchaser, the lands are deteriorated, still the recovery is confined to the land, in its actual state at the time of the recovery; for at the common law no damages were given in real actions.

It is true that, in the case of the heir, he is in by descent; and so his possession, being cast upon him by the law, may seem rightful; but when the wife is endowed upon a recovery from the heir and assignment of dower, she is in from the death of her husband, and the heir's possession is avoided, and by consequence, there is no right of possession as to this third part acquired to the heir, since the law doth not place him in such third part after the death of the father. Gilb. Ten. 26, 27; Co. Litt. §§ 393, 394. The rule therefore, that subjected the improvements as well as the land in the possession of the heir to the claim of dower, seems a natural result of the general principles of the common law, which gave the improvements to the owner of the soil. See Bac. Abr. "Dower," B, 5.

It is not quite so easy to ascertain upon what ground the exception in favour of purchasers was first admitted to prevail. The reason assigned in Lord Hale's manuscripts, already cited (for it is not assigned in the Year Books), is not, as Mr. Chief Justice Tilghman (Thompson v. Morrow, 5 Serg. & R. 289) has with great force and acuteness shown, a satisfactory reason. Admitting, what is certainly true, that upon a feoffment with warranty the heir is not bound to warrant, if he specially show the matter, except according to the value of the land at the time of the feoffment (Jenk. Cent. 34, 35, case 68. The citation there of 47 Edw. III. 22, seems a mistake. 19 Hen. VI. 46; 46 Edw. III. 28b;

Godb. 151; Pitcher v. Livingston, 4 Johns. 1), this establishes no more than that a covenant of warranty, in construction of law, extends only to the recovery of such value. It does not touch the point, whether any contract between third persons ought to prejudice the right of dower, or whether the tenant in dower ought to be abridged of the general rights, which attach to other persons entitled to the freehold. If there be no warranty upon the alienation, there is no pretence to say, that that fact could operate as a just bar to dower, because the feoffee could not recover over. How then can the case be varied by the fact, that there is a warranty to a limited extent and value? Nor can the exception be explained by considering the improvements as not falling within the dowable estate, not being part of any lands or tenements which were the husband's at any time during the coverture, for that is equally true of improvements by the heir. I do not find that in respect to purchasers, any distinction is admitted, whether the improvements are made with or without notice of the right to dower, or before or after the husband's death. See 1 Rop. Husb. & Wife, 346. And yet if the improvements are made after the husband's death, with knowledge of the right of dower, it is as much the folly of the purchaser to build without assigning dower, as it would be of the heir. The only difference is, that the heir must be presumed to know whether there are other lands sufficient for the dower; the purchaser may not.

The rule may have originated, as has been supposed (Gore v. Brazier, 3 Mass. 533, 544; Thompson v. Morrow, 5 Serg. & R. 289) in the policy of promoting the prosperity of the country by encouraging improvements in agriculture and building; though so wise and philosophical a spirit seems scarcely to belong to so early an age, fettered with feudal tenures and military services. The anxiety to promote alienations and subinfeudations, and thus to disentangle inheritances from some of their numerous burthens, may have induced the courts to adopt the rule, as founded in general justice. Be this as it may, it is now admitted to constitute a fixed maxim of the common law; and in all the American cases, in which it has been brought into controversy, its obligatory force has been fully established. The decisions (Gore v. Brazier, 3 Mass. 544; Libbey v. Swett, Story, Pl. 365, note; Catlin v. Ware, 9 Mass. 218; Ayer v. Spring. Id. 8, 10 Mass. 80) in the supreme court of Massachusetts are directly in point. I have no difficulty, therefore, in affirming, that by the local law the dower must be assigned to the widow, exclusive of any improvements made by the purchasers since the alienation.

But the next point is, whether, excluding the improvements on the land, the dower is to be assigned according to its present value, or that at the time of the alienation; or, in other words, whether the dowress, or the tenant, is now to have the benefit of any enhanced value of the land, between the alienation and the assignment of dower, arising from the general progress and population of the country. In Gore v. Brazier, 3 Mass. 544, Mr. Chief Justice Parsons said: "If the husband, during the coverture, had aliened a real estate in a commercial town, and at his death, the rents had trebled from various causes unconnected with any improvements of the estate, and the widow should then sue for her dower, perhaps it would be difficult for the purchaser to maintain, that one ninth only, and not one third part, should be assigned to her." The counsel on both sides quote this language as decisive in their favour. On the one hand it is said, that the expression "unconnected with any improvements of the estate," demonstrates, that any increase of value, which results to the land, from the existence and proximity of the improvements, (as, in the present case, by the establishment of a flourishing manufactory), is to be excluded from the dower, as well as the improvements themselves. On the other hand it is said, that the learned judge did not intend any such thing. He meant merely to distinguish generally between the increase of value from the improvements, and from general causes, without entering into the consideration, how far those improvements may have collaterally increased the value of the land. It would be unjust to the memory of the learned judge, to give to any language used by him, in a case not before him, and introduced merely by way of argument, any more authority than what belongs to a dictum, expressing a general truth. I am not quite satisfied, that a case, like that now presented, was then in his mind; a case, where the erection of a manufacturing establishment on the premises has given an increased value to all the land in the neighborhood; a value which does not grow out of the mere erection, but out of the nature of the employment, and the capital connected with it. If a dwelling-house of the like extent had been erected, the value would not have been materially enhanced. If the manufacture of cloths were now discontinued, there would be an immediate and serious diminution of value.

In the case of Libbey v. Swett, decided in 1804 (Story, Pl. 365, note), with a manuscript copy of which I was favoured by the late Mr. Chief Justice Sewall, the only point was, whether the widow was entitled to dower of the mills newly erected by the alienee, the other part of the premises remaining in the same state as before the alienation. In Catlin v. Ware, 9 Mass. 218, the land had been improved by ditching, making walls, and erecting and repairing buildings, and the court held, that the widow was "entitled to her third part of the land, in the condition it was in at the time of the alienation by her husband." The same point was subse-

quently ruled in Ayer v. Spring, 9 Mass. 8, 10 Mass. 80. In neither of these cases did the precise question arise, whether, if the land was enhanced in value by causes unconnected with the direct improvements by the alienee, since the alienation, that value was to be excluded in the assignment of dower. Nor does the more difficult question appear to have been presented in the argument, whether an increased value of the unimproved part of the land, arising collaterally from improvements on another part of the land, varies the claim of dower. Suppose a farm of 100 acres, on one acre of which a manufacturing establishment is erected, and this gives an enhanced value to the remaining 99 acres of 33⅓ per cent., is the dower to be reduced one third on the 99 acres, or is it to be of one third of the 99 acres, and of such portion of the other acre, as is equal to its value deducting the improvement?

In Humphrey v. Phinney, 2 Johns. 484, the supreme court of New York decided, that dower was to be assigned according to the value of the land at the time of the alienation by the husband, and not according to its improved value at the time of the assignment. But there, upon the special pleadings, the only point seems to have been, whether dower should be of improvements made upon the land by the alienee. The court founded itself upon a statute of the state, which was construed to restrain the dower to the value at the alienation; but at the same time asserted, that the same was the rule of the common law. In Dorchester v. Coventry, 11 Johns. 510, the point as to the increased value of the land, independently of the improvements, was distinctly considered, and the court decided, that the dower was to be of the value of the land at the time of the alienation, and that the legislature did not intend to make any distinction between improvements and the increased value of the land. This doctrine was again followed in Shaw v. White, 13 Johns. 179, where the conveyance was of new and unimproved lands, which had been highly improved by the purchaser. In Hale v. James, 6 Johns. Ch. 258, the same question arose before Mr. Chancellor Kent, upon a somewhat different state of facts, for, independently of the improvements, the land had diminished in value since the alienation. That learned judge went again elaborately into the doctrine, and adhered to the rule already laid down, viz. the value of the land at the time of the alienation, acting upon it as a clear rule of the common law. With the most profound respect for so great a judge, I must be permitted to doubt, if there be any such doctrine in the common law. The authorities referred to do not, (though Mr. Roper, in his late work thinks otherwise, 1 Rop. Husb. & Wife, c. 9, § 2, p. 3, p. 346, 347) in my humble judgment, warrant the conclusion. It is true, that Perk. Dower, § 328, states, that where the alienee of the land hath made improve-

ments, "the wife shall not have the dower, but according to the value it was at in the time of the husband;" and for this he cites Fitzh. Abr. "Dower," 192, already quoted. But in that case the widow had dower of the land, saving to the alienee the houses built by him, as there was land enough for it without touching them. And probably Perkins had no reference in this paragraph to any increase of value, except by the buildings. The language from Lord Hale's manuscripts admits of the same interpretation; and he relies upon no other authorities than those which have been already commented on.

It is a great consolation to me to find my own views of the doctrine supported by the high authority of Mr. Chief Justice Tilghman; and I should have been spared some research, if his very learned judgment in Thompson v. Morrow, 5 Serg. & R. 289, had earlier fallen under my observation. I entirely accede to the general reasoning by which he supports his opinion, and have nothing to add to what he has, with so much accuracy and clearness, collected. In his own language I can state, that "with respect to dower, I have found no adjudged case in the Year Books confining the widow to the value at the time of the alienation by her husband, where the question did not arise on improvements made after the alienation; and that having considered all the authorities which bear upon the question, I find myself at liberty to decide according to what appears to me to be the reason and the justice of the case, which is, that the widow shall take no advantage of the improvements of any kind made by the purchaser, but throwing those out of the estimate, she shall be endowed according to the value at the time her dower shall be assigned to her." This doctrine appears to me to stand upon solid principles, and the general analogies of the law. If the land has, in the intermediate period, risen in value, she receives the benefit; if it has depreciated, she sustains the loss. Her title is consummate by her husband's death, and, in the language of Lord Coke, that "title is to the quantity of the land, viz. one just third part." If, on the other hand, the value of the land has increased solely from the improvements made upon it, and without those improvements it would have remained of the same value as at the time of the alienation, the old value, and not the improved value, is to be taken into consideration. For practical purposes, it is impossible to make any distinction between the value of the improvements, and the value resulting from the improvements; between improvements, which operate on a part of the land, and those, which operate upon the whole.

Upon the whole, my judgment is, that the dower must be adjudged according to the value of the land in controversy at the time of the assignment, excluding all the increased

value from the improvements actually made upon the premises by the alienees; leaving to the dowress the full benefit of any increase of value arising from circumstances unconnected with those improvements.

Decree: This cause came on to be heard at the last May term, on the bill and answer, and was argued by counsel. Whereupon, it is ordered, adjudged, and decreed, that the said Ellick and Elizabeth, in her right, have as her dower, of the endowment of Roswell Merrick, her late husband, now deceased, one just third part of the lands, tenements, and hereditaments, herein after mentioned, exclusive of the increased value of the same, arising from, or caused by the buildings erected, and improvements made upon said lands and tenements, &c., or any one of them, since the alienation thereof by the said Merrick, viz., of one certain tract of land, &c., &c.

And it is further ordered and decreed, that the said Ellick and Elizabeth have and recover their reasonable damages by reason of the detention of her dower in the premises, from and after the 3d day of March, in the year of our Lord 1823, when they demanded of the defendants, that they should assign and set out to the said Elizabeth her said dower in said lands, tenements, and hereditaments, until the present time. And that the plaintiffs recover of the defendants their legal costs of this suit, to be taxed by the court. And it is further ordered and decreed, that this bill be dismissed as to all the other lands and tenements mentioned in said bill, and the said Ellick and Elizabeth's claim, in her right, of dower in the same, or any, or either of them.

And it is further ordered and decreed, that commissioners be appointed to inquire, ascertain, act, and report, as soon as may be, on the matters following, viz.:

1. The several and respective times when the said Roswell Merrick alienated the above described lands, tenements, and hereditaments, and any parcels or undivided parts thereof.

2. The present value of said lands, tenements, and hereditaments, exclusive of the increased value, occasioned by the buildings and improvements on the premises, since the alienation thereof by the said Roswell Merrick; and also the reasonable damages by reason of the detention of her dower in the premises from and after the third day of March in the year of our Lord 1823 to the present time.

3. If the commissioners shall find, that one third part of said lands, tenements, and hereditaments can be assigned, set off to said Elizabeth, by metes and bounds, without great prejudice to the same, then, that they proceed to assign and set off to the said Elizabeth one just third part of said lands, tenements, and hereditaments, exclusive of the increased value thereof, occasioned by the buildings erected, and improvements made thereon since the alienation thereof by

said Roswell Merrick, meaning so much and such part of said lands, tenements, and hereditaments, as would be equal in value to one just third part thereof at the present time, in case no buildings had been erected or improvements made thereon since the alienation thereof by the said Roswell Merrick.

4. If the commissioners shall find, that one third part of said lands, tenements, and hereditaments cannot be assigned and set off to said Elizabeth, as aforesaid, to hold in severalty by metes and bounds, without inconvenience and prejudice to the same, then, that they inquire, and ascertain, and report to the court, the true yearly amount and value of the rents, profits, and income of said lands, tenements, and hereditaments, exclusive of the increased value arising from, and occasioned by the buildings erected, and improvements made thereon since the alienation thereof by said Merrick, meaning the true yearly amount and value of the rents, profits, and income, which the said lands, tenements, and hereditaments would now yield, in case no buildings had been erected, or improvements made thereon since the alienation thereof by the said Roswell Merrick.

[NOTE. On the coming in of the commissioner's report, the cause came on for argument upon the question of confirming the report. Two exceptions which were taken to it by the defendants were overruled, and the report confirmed. Case No. 11,357.]