# ROCKINGHAM,

## DECEMBER TERM, A. D. 1859.

### HILL v. McIntire.

The estate of the guardian of a minor being insolvent, and his sureties irresponsible, it is not necessary for the ward to institute proceedings at law before he can file a bill in equity to recover such part of the estate as he can trace.

Any person in whose hands any part of the ward's estate can be found will be held as a trustee for the amount, if it can be shown that it came into his possession with notice of the trust.

IN EQUITY. H. M. Hill and five others complained against E. S. McIntire and A. R. Hatch, that their grandfather, S. Hill, died seized of a large real estate, and by his will, dated February 4, 1839, he left a large part of his estate to the complainants. On the 12th day of January, 1847, Jefferson McIntire was appointed guardian of the complainants, then minors, and gave bond, with W. Hanscom and R. McIntire sureties. There was set off to the complainants and one C. Hill, by legal partition of said S. Hill's estate, a lot of land in P., with two brick stores thereon, and a lot with wooden stores, wharves, docks, &c. These lots, stores, &c., were sold by the guardian, by license of the court of probate, about the year 1852, for $7,050, and the guardian received the pay for them, being $1,175 for the shares of each of the complainants and said C. Hill. In April, 1848, the guardian sold

land in N., and received for it at least $541.54, and other lands in P. and N., to the amount of several hundred dollars more. The guardian received of E. S. Hill and others, on the 19th of February, 1851, $140 for property set off to them on partition less than their share. Said McIntire put into the hands of A. R. Hatch, or there was paid into his hands for said McIntire, as guardian, the amount of the sales of said stores and lots, and McIntire placed in said Hatch's hands other moneys, arising from the sales of other lands of his said wards. McIntire was deeply indebted to Hatch, and his property mortgaged to him for all it was worth, years before he died. Said Hatch knew the money he so received to be trust property, and he took it as such, and had the entire use and income of it; has kept it at interest, or has used it for his own purposes, and is liable for interest. The guardian died insolvent in 1857, and his sureties are irresponsible. Before the guardian's death, F. A. Hill, one of the complainants, endeavored to obtain a settlement of said guardian's account, and cited him to render his account in the probate court, in July, 1857. The proceedings in the court of probate were pending at the guardian's death, and have been continued against said E. S. McIntire, as his administratrix, since his decease. Neither the guardian in his life, nor the administratrix since, has presented any such account, though said administratrix has been required by said court to render such account. Said Hatch has appeared as counsel for said McIntire and his administratrix, and has had in his hands all the books and papers of said McIntire. Neither Hatch nor the administratrix have given an account of the money in the hands of the deceased, or of either of them, except that Hatch has stated that there was in the bank only $1,500 which he could pay over to the complainants—which the complainants do not believe to be true. The defendants set up various pretenses for delaying to account, which com-

plainants charge to be untrue. The complainants pray an answer under oath, an account of the money received, of the use made of it, and the income from it, and for general relief.

To this bill a demurrer was filed.

*H. Webster,* for the defendants.

1. The complainants cannot sustain their bill for an account till they have exhausted their remedies in the probate court. No account has been settled there, and the bill shows that proceedings on the account are still pending there. A bill will not lie to quicken proceedings in the probate court, or to compel the rendering of fuller accounts than have been filed.

2. Until a decree has been had in the probate court no bill will lie to pursue the property into the hands of third persons; and it may not be amiss to add, that when the relative rights of the complainants shall have been determined by decree in the probate court, upon the guardian's accounts, there will be no practical necessity of this, or any bill whatever, to obtain discovery or relief from the other defendant. See *Dubury* v. *Clifton,* Coxe 328; *Beck* v. *Burdett,* 1 Paige 305; *Clarkson* v. *Depeyster,* 3 Paige 320; *Hendricks* v. *Robinson,* 2 Johns. Cases 283; *Wiggins* v. *Armstrong,* 2 Johns. Cases 144; *McKinny* v. *Cowles,* 1 Mon. 106; *Allen* v. *Camp,* 1 Mon. 231; *United States* v. *Sturges,* 1 Paine 525; *Ranbart* v. *Mayfield,* 1 Hawk. 85; *Angell* v. *Draper,* 1 Vern. 399; *McElwain* v. *Willis,* 9 Wend. 548.

3. The law gives the complainants a full remedy in the probate and common law courts.

*S. H. Goodall,* for the complainants.

BELL, C. J. The authorities cited by the defendant relate entirely to bills in equity, brought in aid of an execu-

Hill *v.* McIntire.

tion at law. Such bills may be brought in two cases : first, where a party has acquired a lien on certain real or personal estate, by attachment or seizure on execution, or by docketing his judgment, or delivering his execution to an officer, according to the usages of different States as to the mode of acquiring a lien on property by suit, and some conveyance or incumbrance stands in the way of his execution. In such cases the party may file his bill to set aside the obstacle, as soon as he has acquired his lien. *Dodge* v. *Griswold*, 8 N. H. 245; *Kittredge* v. *Warren*, 14 N. H. 509; *Kittredge* v. *Emerson*, 15 N. H. 227; *Stone* v. *Anderson*, 6 N. H. 506. The second case is where the party has obtained no lien, or the property sought to be reached is not liable to an execution at law, as in the case of choses in action, funds held in trust for the debtor, or the like. In such cases equity will not interfere to subject the property to the discharge of the debt, until it is first shown that the party has exhausted his remedy at law, by alleging and proving that he has issued his execution against his debtor, and that the same has been returned by the proper officer unsatisfied because no goods can be found. Both these classes of cases are discussed in *Tappan* v. *Evans*, 11 N. H. 311, where the rules applicable to them are distinctly stated. If this is regarded as belonging to either of these classes, the bill cannot be maintained, because here it is not pretended that any lien has been acquired by proceedings on an execution, or preliminary to an execution, or that any execution has been issued and returned unsatisfied. The bill cannot have been filed with any such view. On the contrary, it does not allege any legal proceedings except those in the probate court, which, though they may establish the fact and the amount of an indebtedness of the guardian's estate to his wards, cannot result in any execution until the end of a suit at law on the guardian's bond, or on the decree of the court. It is, undoubtedly, filed upon a different view

of the relations of the parties. Executors and administrators of decedents' estates, and guardians of minors and others, are regarded in equity as trustees; the funds which come into their hands are trust funds, and in proper cases the remedies, which are open to *cestui que trusts*, are equally available to those who are entitled to the moneys which are found in the hands of such executors and guardians. *Adair* v. *Shaw*, 1 Sch. & Lef. 243; Story Eq. Jur. 533, 581; Ram on Assets 491, ch. 37, sec. 4.

The complainants state, as their case, that J. McIntire was duly appointed their guardian; that as such he has sold a large amount of property belonging to them, and the money arising from these sales has been paid over by McIntire to the other defendant, or was originally paid by the purchasers of the property to him, by direction of McIntire; that this money was received by Hatch, with the knowledge that it was a fund derived from the sale of the complainants' property, and that it, therefore, legally and equitably belonged to them; that they have endeavored to obtain a settlement with McIntire during his life, and with the administratrix since his decease, by proceedings in the court of probate, which have been, and are likely to be, ineffectual, because McIntire's estate is insolvent, and the sureties upon his official bond are irresponsible. The object of the bill is to call upon the administratrix and the alleged depositary of the fund, to discover the facts, and if there can be found within reach of the court any part of the fund, that the court may order it to be paid over to the complainants.

The question is, if, in this view, the bill sets up a case in which the plaintiff is entitled to relief. The remedy by proceedings at law must be entirely illusory if we assume, as we must, of course, upon a demurrer, that the allegations of the bill are true. Let us, then, suppose that the claim of the plaintiffs upon the estate of the guardian is ascertained, either by proper proceedings in the court of

probate or by an agreement. The wards may then, by an order of the court of probate, sue the sureties on the guardian's bond;—but they are admitted to be insolvent, and the remedy is, therefore, worthless. Or they may proceed against the insolvent estate of the guardian, by presenting their claim to the commissioner, and upon its allowance receive their dividend of the assets with the other creditors. Upon their statement there is in the hands of the defendant, Hatch, a large sum of money derived from the sale of their estate, received by him with full knowledge of its origin and condition, and for which, if he should be charged in this proceeding, he will be accountable in full, unless he or the other defendant—the administratrix of the guardian—shall show that some part of it is, in equity, the property of the guardian. Hatch is alleged to be a large creditor of this insolvent estate. If this bill can be defeated, this fund will fall into the general mass of the assets, and will be distributed among all the creditors *pro rata*, Hatch sharing equally with its equitable owners in the whole fund, in proportion to the amount of their respective claims, upon the most favorable chance for the plaintiffs; as, against McIntire's estate, Hatch may perhaps be entitled to set off McIntire's private debt against the whole claim, and thus neither the plaintiffs nor the other creditors might be able to reach any part of it.

The claim of the plaintiffs, if well founded in fact, is one of a purely equitable character. No proceeding in the court of probate would afford them any relief, and we are unable to discover any course of proceeding at law by which they could obtain any redress; neither do we see any way by which the prosecution of any suit or proceeding in the court of probate or at law could materially aid them in this proceeding. We think there can be no doubt as to the equitable principles involved in the case. It has been truly said that the only thing inquired of in a court

of equity is whether the property bound by a trust has come into the hands of persons who are either bound to execute the trust or to preserve the property for the persons entitled to it. Trusts are enforced not only against persons who are rightfully possessed of trust property, as trustees, but also against all persons who come into possession of the property bound by the trust, with notice of the trust; and whoever so comes into possession is considered as bound, with respect to that special property, to the execution of the trust. 1 Story Eq. Jur., sec. 533.

Generally speaking, a man does not become a party to a breach of trust by buying, or receiving as a pledge for money advanced to the executor at the time, any part of the assets. But he does become such party by buying or receiving in pledge any part of the personal assets, not for money advanced at the time, but in satisfaction of his private debt. Whenever there is a misapplication of the personal assets, and they, or the proceeds of them, can be traced into the hands of any person affected with notice of such misapplication, then the trust will attach upon the property or the proceeds in the hands of such person, whatever may have been the extent of the misapplication or conversion. Ram on Assets 491, ch. 37, sec. 4; *Adair* v. *Shaw*, 1 Sch. & Lef. 261–2; 1 Story Eq. Jur., sec. 581; 2 Mad. Ch. 125; *Murray* v. *Ballou*, 1 Johns. Ch. 566; *Shepherd* v. *McEvers*, 4 Johns. Ch. 136; *Murray* v. *Sylburn*, 2 Johns. 44; *Shibla* v. *Ely*, 2 Halst. Ch. 181; *Oliver* v. *Pratt*, 3 How. U. S. 333.

Courts of equity act by creating trusts *in invitum*, where a party purchases trust property, knowing it to be such, in violation of the objects of the trust. In such a case courts of equity force the trust upon the conscience of the guilty party, and compel him to perform it, and to hold the property subject to it, in the same manner as the trustee himself held it. 4 Kent Com. 60; 2 Fonb. Eq., B. 2, ch. 6,

sec. 1 (a), 2 (b); *Powell* v. *Munson Manf. Co.*, 3 Mason 347; Com. Dig., Chancery, 4, W 28.

It is upon this ground that persons colluding with the executor or administrator, in a known misapplication of the property in their hands, are made responsible, for they are treated as purchasers with notice, and mere trustees of the parties who are entitled to the assets; the latter being a trust fund, under the administration of the executor or administrator. 1 Sch. & Lef. 262; *Lee* v. *McAuley*, 1 Y. & Coll. 265; Story Eq. Jur., sec. 1255.

Upon these views the demurrer must be overruled.

*Demurrer overruled.*