The opinion of the court, (Metcalf J., did not sit,) contains a sufficient statement of the facts and pleadings in the case.
Fletcher, J.
The amended bill in this case sets out, that ' on or about the 18th day of March, 1846, the plaintiff made an agreement with one William Parsons, Jr., by which Parsons agreed to convey to her or to whomsoever she should direct in writing, a certain estate in Boston, upon the payment to him of the sum of $12,500, within sixty days from the time of the agreement, with interest from that time ; that the plaintiff entered into a negotiation with the defendant Aldrich, with a view to obtain his aid in raising the $12,500, to pay for the estate; and that various plans and arrangements were formed and entered into "between them for this *432 purpose, but which all failed and were abandoned and given up; when it was finally agreed between them, as follows, to wit, that the plaintiff should give him an order on Parsons, requesting him to transfer the title of the estate to the defendant ; that the defendant, upon the receipt of the title and simultaneously therewith, should mortgage the estate to the New England mutual life insurance company, for the sum of $10,000, to be received from them and paid to Parsons in part fulfilment of the condition of the contract, and with this $10,000, and $504 to be borrowed of the plaintiff, and other moneys of his own sufficient for that purpose, should pay Parsons the whole sum due by the condition of the contract, which was then supposed to be about $12,600; that before any other deed of the estate was made, or any further incumbrance of any kind was placed thereon, he would then pay the plaintiff the sum of $504, borrowed of her as aforesaid, and the sum of $3000, in money, and would execute to her an absolute deed of the premises, subject to the mortgage to the New England mutual life insurance company, for $10,000, and to a mortgage to Scribner and Cooledge, the other' defendants, for the sum of $6000; that when this arrangement was fully completed, he would make the mortgage to Scribner and Cooledge, for the sum of $6000; and that in the mean time, and before the payment was made, and the deed executed to the plaintiff, the deed so taken by the defendant Aldrich was to be of no effect or force whatever, save as a deed of the estate in trust for the plaintiff.
In compliance with this agreement, the plaintiff gave Aldrich an order in writing to Parsons, to execute a deed of the estate to Aldrich, according to the agreement. This order was dated April 9th, 1846, but was not delivered until April 24th, 1846. Upon the presentation of this order to Parsons, he made a deed of the estate to Aldrich, and Aldrich, at the same time, made a mortgage of the estate to the New England mutual life insurance company, to secure his note to them for $10,000, which, with the sum of $504, borrowed of the plaintiff, and about the sum of $2050, in addition thereto, amounting in all to about the sum of $12,550, the defendant paid to *433 Parsons, in full compliance with the contract made with him as before set forth. Aldrich then duly executed a deed conveying the estate to the plaintiff, upon condition that she should pay the two mortgages aforesaid, the mortgage to the New England mutual life insurance company, and the mortgage (thereafter to be executed) to Scribner and Cooledge, amounting in all to the sum of $16,000 ; which deed, after consulting her legal adviser, and by his advice, the plaintiff accepted, and the same was duly delivered to her.
By the request of Aldrich, the plaintiff" did not put her deed on record, but delivered it to her brother, Horatio G. Liver-more, who, by the request of Aldrich, accompanied him to New York, there to receive the sum of $3504, in fulfilment of the contract made by Aldrich as before stated. On the passage to New York, the deed made by Aldrich to the plaintiff, and delivered to and accepted by her, was privately abstracted from the possession of her brother, under circumstances which induced the plaintiff to believe that it was done by Aldrich. Upon the arrival of Aldrich and Horatio G. Livermore at New York, after various shifts and experiments, and under various pretences, Aldrich wholly failed and refused to pay the $3504, and finally made and delivered an absolute deed of the estate to Scribner and Cooledge, so that the plaintiff has wholly lost her estate.
The bill charges upon Aldrich the fraudulent purpose and design of defrauding the plaintiff of her estate, and sets out various acts and things as manifesting such fraudulent intent. It also charges that Scribner and Cooledge had full knowledge of all the facts, and fraudulently cooperated with Aldrich to defraud the plaintiff of her estate.
The bill alleges, that Aldrich, if he had performed his contract, would have made by the business about $500, and that Scribner and Cooledge took possession of the estate under their deed. And the bill prays, that Aldrich, Scribner, and Cooledge may be decreed to make and deliver to the plaintiff a deed conveying to her a good and perfect title to the premises, subject to the mortgage to the New England mutual life insurance company, upon the payment to them of the sum of *434 money so paid by Aldrich to Parsons, after deducting therefrom the following sums, namely, the sum of $10,000 borrowed of the New England mutual life insurance company, the sum of $504, borrowed of the plaintiff, and the amount received by Scribner and Cooledge from the rents of the estate, since they took possession thereof; that an account may be taken of the rents and profits of the estate since it came to the possession of Scribner and Cooledge ; and for such other and further relief as may seem meet.
It was conceded, at the hearing, on the part of the plaintiff, that, in support of the bill, no agreement was relied on as •made in writing, other than the deeds, documents, and letters recited or referred to in the bill, which are to be considered under the demurrer.
There is a demurrer to the bill, which states for cause, that the plaintiff has not shown in her bill, that the trusts concerning land in the bill set forth were created or declared in any writing, signed by the party alleged to have declared the same, or his attorney; nor are these alleged trusts such as arise or result by implication of law; and so this court has no jurisdiction in equity of the subject-matter of the bill. It was assumed in the argument by both sides, that the estate was of the value of $16,000, and it may be so taken for the purposes of the consideration of the court.
This court, as a court of equity, has no jurisdiction of matters of fraud, except when such matters arise indirectly in cases, in which the court has equity jurisdiction. But jurisdiction in this case is claimed on the ground of a trust; and it is maintained on the part of the plaiti'tiff, in the first place, that the bill discloses resulting trust, or a trust by operation Cc law.
When land is purchased, and the conveyance of the legal estate is taken in the name of one person, and the consideration is paid by another, the trust of the legal estate results to the person who advances the purchase-money, and the party named in the conveyance is a trustee for the party from whom the 'consideration proceeds. So, if only a part of the purchase-money is paid by the third party, there will be a resulting trust *435 in his favor pro tanto. It is also well settled, that though it is expressed in the deed, that the consideration was paid by the grantee, yet paroi evidence is admissible to show that the consideration was in fact paid by a third person, for the purpose of establishing a resulting trust in favor of such third person.
The admission of paroi evidence in such cases, it is fully settled, does not come within the prohibition of the statute, providing that trusts concerning lands, excepting such as may arise or result by implication of law, shall not be created or declared, unless by an instrument in writing, signed by the party making or declaring the same, or by his attorney. This doctrine is now too fully and firmly settled to admit of any controversy, though in some of the earlier English decisions, and in some of the early cases in this commonwealth, the courts seem to have taken a different view of the subject. Notwithstanding the doctrine which appears to have been held in the earlier cases in this commonwealth, that where the deed expresses the- consideration to have been paid by the grantee, paroi evidence is not admissible to show the payment by a third person, the contrary doctrine is so fully established, that it must now undoubtedly be regarded by this court as the law. 2 Sug. Vend. & Purch. (7th Am. ed.) 389; Page v. Page, 8 N. H. 187; Verplank v. Caines, 1 Johns. Ch. 57, 59; Scoby v. Blanchard, 3 N. H. 170; Powell v. Monson & Brimfield Man. Co. 3 Mason, 347, 362; Gardiner Bank v. Wheaton, 8 Greenl. R. 373, 379; Pritchard v. Brown, 4 N. H. 397; Botsford v. Burr, 2 Johns. Ch. 405; Boyd v. McLean, 1 Johns. Ch. 582; 4 Kent, (4th ed.) 305, 306.
Applying the well settled principles of law, in regard to resulting trusts, to the facts in the present case, it is maintained, on the part of the plaintiff, that it appears by the bill, that the conveyance from Parsons to Aldrich was made by her procurement; that the consideration beyond the $12,500 to Parsons was all paid by her; that of the $12,500 only a small sum was paid by Aldrich, the rest being paid by the plaintiff, and raised on the estate; and that the trust of the legal estate, therefore, resulted to her, so far at least as she advanced the purchase-monev: that accordingly Aldrich is her *436 trustee, a.nd upon payment of the small sum advanced by him, should be required to convey the estate to her, subject only to the mortgage for $10,000, to the New England mutual life insurance company; and that Scribner and Cooledge, having taken a conveyance, with full knowledge of all the facts, stand on the same ground with Aldrich.
This position, on the part of the plaintiff, might perhaps be sustained, as well founded in law, if nothing appeared in the bill to affect or control the legal presumption from the facts on which the plaintiff relies. But as the resulting trust, in the case stated, is a mere matter of equitable presumption, it may be rebutted by other circumstances, which negative the presumption. As resulting trusts are left unaffected by the statute of frauds, such trusts may be rebutted or disproved by paroi proof. If the plaintiff sets up an equity founded in paroi proof, it may be rebutted, put down, or discharged, by paroi proof. Botsford v. Burr, 2 Johns. Ch. 405, 416; Hill on Trustees, 96.
It is quite apparent, that the allegations in the bill conclusively repel the idea of the supposed resulting trust. The position of a resulting trust assumes, that the plaintiff having paid the consideration when the conveyance was made to Aldrich, the latter became the trustee of the estate for the plaintiff, and was bound to convey it to her, subject only to the first mortgage for $10,000. Now the agreement which is set out fully and expressly in the bill, that Aldrich was to pay the plaintiff the sum of $3000, in addition to the money borrowed, and convey the estate to the plaintiff, subject to a second mortgage to be made to Scribner and Cooledge, completely and irresistibly rebuts and overthrows the supposed resulting trust.
There cannot surely be a resulting trust in this case,, as a mere matter of equitable presumption, contrary to the express admitted agreement of the parties. Besides, the bill alleges that the plaintiff actually, deliberately, and by advice of counsel, accepted a conveyance of the estate, subject not only to the mortgage to the New England mutual life insurance company, but also subject to the second mortgage to Scribner and *437 Cooledge. It is clearly impossible to establish a resulting trust, to convey the estate subject to one mortgage only, against the admitted fact of the actual, deliberate, advised acceptance of a deed subject to the two mortgages. The deed accepted proves a written agreement in solemn form between the parties, which completely overthrows the position taken in this case as to a resulting trust.
Then it is maintained, on the part of the plaintiff, that taking the deeds, documents, and letters recited or referred to in the bill, and which are to be considered under the demurrer, according to the agreement of the parties, the bill discloses a trust concerning land created or declared by an instrument in writing signed by the party creating or declaring the same or by his attorney. This point can be determined only by an examination of the papers themselves. There is certainly nothing in the deeds indicating any trust. In the deed from Parsons to Aldrich, the consideration is expressed to have been paid by Aldrich. The letters, which are between Aldrich and Horatio G. Livermore, consist of hasty, broken, rambling, confused observations about money, goods, business, and other things, all of which are quite unintelligible, and surely import no trust concerning land.
Upon a careful examination of all the papers, the court can see no intimation of a trust, nor any thing which can raise a question, whether a trust concerning land is created or declared by any instrument in writing signed by the party or by his attorney.
The counsel for the plaintiff suggested various other grounds of jurisdiction, such as there being more than two parties, or the delivery of goods secreted or withheld, or specific performance, or discovery; but the court can see nothing in this bill to give jurisdiction on any of these grounds, or on any ground. In truth, the bill discloses merely a clear and decided case of gross fraud, not within the equity jurisdiction of this court. The demurrer is allowed and the bill dismissed without prejudice.