## BEAN *v*. BEAN, and MARTHA C. BEAN, Trustee.

To charge a person as trustee on account of repairs, done by the principal defendant, to buildings not the property of the trustee, a special contract or request by the trustee to do the work must be shown.

Where a widow held real estate by a deed, the consideration of which was certain notes of the grantor given up to him, which were due to the estate of her husband, but no administration had been taken on the estate, and there was one minor child; and afterwards, certain repairs were made upon the buildings by a son of the widow, but without any contract or request by her therefor — *Held*, that she was not the legal owner of the premises, and could not, upon such facts, be charged as trustee of the son for the repairs made by him.

To charge a trustee as debtor of a principal, it must appear from the disclosure what amount is due, so that the court can definitely determine the sum.

FOREIGN ATTACHMENT. The following is the disclosure of the trustee.

INTERROGATORY 1. Have you now, or have you at any time since the service of the plaintiff's writ upon you, had any money, goods, chattels, rights or credits of the said Lemuel W. Bean in your hands or possession?

ANSWER. I have not, unless it may be so adjudged by the court upon the following statement of facts:

My husband, Daniel Bean, Jr., died, I think, the 7th day of February, 1853. The day after he was buried, which was the 10th, my father, Jacob Davis, of said Warner, bought of Dolphus S. Bean the place on which I now live, consisting of a house, barn and shed, and about six acres of land, situate in Waterloo

village, so called, in said Warner. I think the price was six hundred and twenty-five dollars. I took the deed in my own name. I think Dolphus S. Bean, of whom the place was purchased, was owing my husband, Daniel Bean, Jr., to the amount of about four hundred and seventy-five dollars, and his notes to some where about that amount were given up in part payment of the place.

In April, 1853, I think, the repairing of the buildings was commenced. The house was one and one half story high, upon which there was four feet put, making of it a two-story house, and finished off inside and out. There were six rooms finished off. They were lathed, plastered and painted, and four of them papered. These rooms were in the upper story, and two rooms papered in the lower story, and one room painted below. There were new blinds put on to the upper part to eleven windows. The old stairs were taken away and new front stairs put up. Where the front entry now is, there was a bed-room, and said bed-room was put where the old stairs were. A new passage-way was constructed to the cellar. An addition was put to the barn of about twenty-four feet square. The front of the addition was covered with boards, planed and matched and painted; the west end was clapboarded and painted. There was a cellar put under the addition. At the same time there was a new well dug and a chain pump put in. The well was a little more than twenty feet deep. I do not know what the well and pump cost, but presume it cost thirty-five dollars or more. These repairs and alterations were all made by said Lemuel W. Bean. He bought a small barn, twenty-four feet square, for which, I think, he paid fifty dollars. This he took down and put up again, as the aforesaid addition. It was shingled new, and the front side new boarded, and the west end new clapboarded, as above described. Lemuel lived in the house with his family. We all lived together as one family. I think Lemuel moved his goods into the house in August, 1853, and they remain there now. Lemuel has been absent since some time in June last, until last evening, (September 27th.) His wife has been absent since April

last. He has never paid any rent. I have never paid Lemuel any thing since he has been there, for repairs or otherwise.

As I have already stated, we all lived together in one family; that is to say, my father, Jacob Davis and wife; my said son Lemuel and wife; myself and daughter. My daughter was there a part of the time. She is now twenty years of age. My father carried on the six acres of land bought with the house, and the proceeds were put into the family, and Lemuel furnished the remainder of the provisions used in the house.

*Tappan & Bailey*, and *Bartlett*, for the plaintiff.

If the disclosure shows an indebtedness of the trustee to the principal defendant on contract, for which he could recover, the trustee is chargeable. *Weller* v. *Weller*, 18 Vt. 55; *Ins. Co.* v. *Weeks*, 7 Mass. 435; *Kettle* v. *Harvey*, 21 Vt. 301; *Hooper* v. *Hill*, 9 Pick. 440; *Corey* v. *Powers*, 18 Vt. 589; *Woodbridge* v. *Morse*, 5 N. H. 520; *Webster* v. *Gage*, 2 Mass. 504; *Aldrich* v. *Brooks*, 5 Foster 244; Cushing Trustee Proc., secs. 58, 60, 61.

The court determined the question of fact arising upon the disclosure. *Lelland* v. *Sabin*, 7 Foster 84; *Fisk* v. *Field*, 19 Vt. 148.

Here the work and materials were furnished by the principal defendant, for the trustee, with her knowledge and assent, and were beneficial to her. This is sufficient to enable the principal defendant to recover of the trustee. *Mahew* v. *Scott*, 10 Pick. 56; *James* v. *Bixby*, 11 Mass. 37; *Hatch* v. *Piercel*, 1 Foster 549; *Academy* v. *Allen*, 14 Mass. 176; *Chapin* v. *School Dist.*, 10 Foster 32; *Stowe* v. *Crocker*, 19 Pick. 244; 2 Greenl. Ev. secs. 107, 108. Nothing appears to show that an indebtedness did not thereby accrue. If there had been none, the trustee could easily have shown it.

Had anything been due her for rent she would have so stated; any such claim might well be deemed by the parties to have been satisfied, by the supplies furnished by the defendant, or by reason of the interest in the purchase money which he might perhaps

have claimed originally, if the occupation was not gratuitous. The trustee stating no indebtedness for rent, none is to be implied—for the fact was within her knowledge, and might have been stated. And the burden of proof is on her to show a counter claim. Her disclosure, where it is doubtful, is to be construed more strongly against her. *Scott* v. *Ray,* 18 Pick. 369 ; *Cleveland* v. *Clapp,* 5 Mass. 205 ; *Lebor* v. *Amstrong,* 4 Mass. 206.

If the court should hold she is not chargeable, by reason of the $475 of her husband's estate, of which the defendant was one of the heirs, appropriated to her use, (*Leach* v. *Pillsbury,* 15 N. H. 139,) yet this fact is to be considered, with the others, upon the question of indebtedness as possibly tending to show why the indebtedness, though existing, was not acknowledged. It may have been from a design to defraud the defendants' creditors.

Having shown herself indebted to the principal defendant, she must be charged, unless she clearly discharge herself, which she has failed to do. *Graves* v. *Walker,* 21 Pick. 162 ; *Spinney* v. *Hosiery Co.,* 5 Foster 14 ; *Wright* v. *Ford,* 5 N. H. 179 ; *Giddings* v. *Colman,* 12 N. H. 156.

That the disclosure does not show with precision the exact amounts of indebtedness, does not affect the liability. *Dawson* v. *Topliff,* 18 Vt. 399 ; 8 Dig. 353, 8.

The court are to determine the amount, as a jury would.

If that were impossible on the disclosure, it appearing that the trustee is chargeable, the court would order a further disclosure. *Patterson* v. *Buckminster,* 14 Mass. 144 ; *Moore* v. *Green,* 4 Humph. 299 ; *Wheeler* v. *Brown,* 20 Pick. 566 ; *Hovey* v. *Cram,* 12 Pick. 167.

*George & Foster,* for the trustee.

The trustee can only be charged upon the ground of an implied promise to pay for the repairs made by the principal defendant ; because the materials furnished are not specific chattels, which may be exposed by the trustee for attachment, or taken on execution by means of this process, but they have become a part

of the freehold; and it has long been settled that real estate is not money, goods, chattels, rights or credits, within the meaning of the statute regulating foreign attachments.  *Wright* v. *Bosworth*, 7 N. H. 590; *Wells* v. *Bannister*, 4 Mass. 514; *How* v. *Field*, 5 Mass. 390; *Bissell* v. *Strong*, 9 Pick. 561.

The trustee cannot be charged unless the principal defendant might have had a right of action against her; and no such right existed unless it was founded upon an implied promise.  And such an implication can be supported only by first establishing the fact that the benefits conferred upon the trustee were greater than the benefits conferred upon the principal defendant at her hands.

We think the facts and circumstances disclosed warrant no such implication.  The principal defendant, his wife, his sister, his mother (the trustee,) and her husband, lived together as one family; and, apparently, the principal defendant and the trustee both contributed to the common stock of family comforts, without any special contract each with the other, or any expectation of such accountability as exists in the relation of debtor and creditor.

The repairs made by the principal defendant were as essential to his own comfort as to that of the other members of the family.  *Wells* v. *Bannister*, before cited.  There is as much reason to infer a promise by the principal defendant to pay for rent of the premises, as to infer a promise by the trustee to pay for the repairs.  And if the former promise can be implied, then the trustee has her right of set-off.  *Smith* v. *Stearns*, 19 Pick. 20.

The cases cited by the plaintiff do not seem to us to sustain the broad position taken by him, and we suppose the rule can only be held to apply where it is admitted by the trustee, or made clearly apparent upon the disclosure, that funds or property are in her hands, liable to attachment.  *Foster* v. *Dudley*, 10 Foster 464.

EASTMAN, J.  Notwithstanding the deed of the premises, spoken of in the trustee's disclosure, was taken in her name, the property did not belong to her.  The purchase was made by

Jacob Davis, her father, for $625. To pay this sum, notes against Dolphus S. Bean, of whom the place was purchased, to the amount of $475, belonging to the estate of the trustee's husband, were given up to Bean; and we infer from the disclosure, although the fact is not distinctly stated, that the balance, being $150, was paid by Davis.

It does not appear that any administrator on the estate of Daniel Bean, Jr., the husband of the trustee, had been appointed, or that the estate was legally settled; and the delivery of these notes to the grantor of the premises, so far as the disclosure shows, was wholly unauthorized. Where the heirs of an estate are of full age, and capable, they may settle the same between themselves without administration; and their agreements, if understandingly and fairly made, will be binding upon them. *Giles* v. *Churchill*, 5 N. H. 337; *Hibbard, Admr.*, v. *Kent & al.*, 15 N. H. 516; *Clark* v. *Clay*, 11 Foster 393.

But Daniel Bean, Jr. left one minor child, who was twenty years old at the time of the disclosure. The estate could not, therefore, be legally settled without administration, and the delivery of these notes in part payment for the premises was illegal. There was no one authorized to give them up.

If the notes had been legally surrendered to the grantor of the premises, as the property of the estate, and Davis had paid the balance of the purchase money, the widow would be the holder of the property in trust for the estate and her father. Such facts would show a resulting trust in favor of the estate and Davis. *Pritchard* v. *Brown*, 4 N. H. 401; *Page* v. *Page*, 8 N. H. 187; *Pembroke* v. *Allenstown*, 1 Foster 107; *Powell* v. *Monson*, 3 Mason 347; *Jackson* v. *Matsdorp*, 11 Johns. 90; *Gardner Bank* v. *Wheaton*, 8 Greenleaf 373.

Upon the facts disclosed, however, this trustee was not the owner of these premises, although a deed had been made to her in her name; and she could not be charged for the repairs done upon them by Lemuel W. Bean, the principal defendant, unless by express contract with him to do the same. No such contract is shown, nor does it appear that there was any request by the

trustee to have the repairs made, or that anything took place between her and the principal defendant in regard to the same. He was her son, and probably supposed that he had an interest in the premises, as heir of his father, by reason of the notes being surrendered as part of the purchase money. And he may very likely have also supposed that he was increasing his interest in the premises by the repairs which he made.

There being, then, no indebtedness existing from the trustee to the principal defendant, for which he could maintain an action against her, she cannot be charged as his trustee.

But even should we hold that the trustee was indebted to the principal defendant for the repairs made, she could not be charged on this disclosure. There is no price fixed for the labor done or the material furnished, and nothing from which the court could find a definite sum with which to charge her. Before she could be charged, further facts would have to appear.

It is possible that the trustee might be charged for a small amount of provisions furnished, were more facts stated; but it cannot be done as the matter stands; and it is not for this court to order a further disclosure.

*Trustee discharged.*