CASE No. 1135.

## McLAURIN v. WILSON.

1. The interest of a husband, in his wife's land, was sold under execution in 1840, and purchased by C., and a year afterwards the wife executed a deed to C., in which a valuable consideration was stated and its receipt acknowledged; but the husband did not join in this deed, and no reference whatever was made to the sheriff's deed. Upon this latter deed was endorsed a certificate dated eight days afterwards, signed by the wife and a proper officer, but not under his seal; this certificate was in the usual form prescribed for the renunciation by married women of their inheritance, with the omission, however, of the declaration "that she did, at least seven days before such examination, actually join her husband in executing such release." *Held*, that the interest of the wife in this land was not conveyed to C., for the double reason, that the omitted declaration was essential, and so was the officer's seal.

2. The finding of referees and Circuit judge—that the alleged consideration was not, in fact, paid—sustained; but if paid, it would not estop the married woman, or those claiming under her, from asserting their title to this land.

3. The proviso to Section 415 of the Code of Procedure does not prevent a party to the cause from testifying to a communication between his deceased wife (under whom he claims the land in controversy as heir-at-law) and the ancestor (now deceased) of the defendants to the action.

4. A party has the right to require that testimony taken before the clerk under the act of February 15th, 1872, (15 *Stat.* 41,) shall be read at the trial, notwithstanding the attendance of the witness so examined, and his examination in open court.

5. But the court will not grant a new trial for error in excluding such testimony where it related to a matter wholly immaterial.

Before ALDRICH, J., Sumter, June, 1880.

Action by D. B. McLaurin, widower, and Henry J. McLaurin and others, children and grandchildren of Mrs. Agnes D. McLaurin, who died in 1863, against J. Harvey Wilson and others, heirs-at-law of Isaac James Chandler, commenced in 1872. The deed of Mrs. Chandler, mentioned in the opinion, was not produced, nor the certificate endorsed, and the record in the register's office was introduced. In this copy, a flourish of three curves was below and attached to the last letter in the officer's name; and this, the defendants insisted, was intended for a seal. This certificate was as follows:

"SOUTH CAROLINA, Sumter District—I, Mason Remes, one of the justices of the quorum for said district, do hereby certify unto all whom it may concern, that the within-named Agnes D. McLaurin did this day appear before me, and, upon being privately and separately examined by me, did declare that she did actually sign and execute the within release, and that the same was positively and *bona fide* executed at least seven days before this examination, and that she did then and still does, at this time, freely, voluntarily, and without any compulsion, dread or fear of any person or persons whomsoever, renounce, release and forever relinquish all her estate, interest and inheritance to the premises mentioned in the within release, unto the said Isaac J. Chandler and his heirs and assigns forever.

"Given under my hand and seal this second day of February, 1841.

*Mason Remes Q. U.* *Agnes D. McLaurin.*

Other facts are stated in the opinion.

The Circuit decree, omitting its statement of the case, was as follows:

The first and main question is: Does the release and the renunciation of inheritance thereon convey the estate of Mrs. Agnes McLaurin to Isaac James Chandler?

Since the cases of *Hillegas and Wife* v. *Hartley*, 1 *Hill Ch.* 106, and *Kottman and Wife* v. *Ayer*, 1 *Strobh.* 552, I had supposed the question as to the manner of conveying the wife's estate of inheritance in land settled and no dispute could hereafter arise on that subject. The mode of conveying the estate is regu-

lated by act of assembly; the object is to protect it against the husband and preserve it to the wife and children. Although the law allows the use of the estate to the husband during coverture and gives him one-third of it after the death of the wife, yet he cannot alien it unless she conforms substantially to the terms of the act permitting her to alienate. What are those terms? She must join her husband in the release, and seven days after go before a judge or justice and declare that she has joined, &c. Has this been done? The sheriff sold McLaurin's interest in his wife's estate which was the usufruct during coverture. A year after, Mrs. McLaurin made a title in fee of this land to her brother and trustee, Mr. Chandler, in which she is not joined by her husband, and not one word of reference is made to the sale by the sheriff. From all that appears on the face of the deed, the husband had no interest in the land conveyed. It is not described as the land heretofore sold by the sheriff, nor is she alluded to as a married woman, the wife of D. B. McLaurin. From all that appears it is the deed of a *feme sole.* More than this, the renunciation on the back of the deed does not describe her as the wife of D. B. McLaurin. If it be true, as Chancellor Dunkin said in *Kottman's Case* (p. 577), the deed of a *feme covert* is a mere nullity—she has no legal existence; and if the object of the act was to protect the wife and secure her inheritance to her and her children against her own extravagance or the imprudence or misfortune of the husband, the wisdom of the rule is manifest that insists on a substantial compliance with the terms of the act before such a release can be effected. These papers are so defective—fall so far short of what the law requires, that to uphold them is impossible.

As to the payment of the $1,911, the consideration for the purchase, while I am free to say that the finding of a referee on a question of fact is not binding on the court, yet, like the verdict of a jury, it will not be disturbed unless against the weight of the testimony. The referees who made this finding, are intelligent gentlemen, learned in the law; they had the witnesses before them, and every opportunity to judge the value of their testimony; they live in the same county; know them personally or by reputation. I cannot say I have come to a

different opinion in reading the evidence. This finding is supported by the consideration that Mr. Chandler was the brother of Mrs. McLaurin. She was very poor; he a man of fortune. As trustee, he made returns, as appears from the report, and yet not one dollar of the receipt or disbursement of this $1,911 can be found in his returns. It is said he expended it in the support of his sister and her family, but we are not allowed to resort to conjecture. As trustee, it was his duty, not only to account for her estate, but, when required, to exhibit his vouchers for expenditures. This was his sister's inheritance; so far as I can see, it was all she had left of her paternal estate. With a large family struggling against poverty, duty and affection alike combined to induce him to save to her this remnant. And if we are allowed to resort to conjecture, the more charitable construction would be that he was saving this pittance to his less fortunate sister and her children.

It is not necessary to consider the other exceptions.

It is ordered, adjudged and decreed that the exceptions be overruled, and the report confirmed and made the judgment of the court.

The points made by the exceptions are sufficiently stated in the opinion.

*Messrs. Moise & Lee,* for appellants.

The release was effectual to convey Mrs. McLaurin's interest. We must consider the purpose, intention and object of the act. *Sedgw. Stat. & Const. L.* 230, 246, 260; 1 *Bl. Com.* 61. The act does not say one deed, but requires a joint release, so that there may be, as here, two deeds. The husband, after the sheriff's deed, had nothing left to convey. There was a substantial compliance with the law. 1 *Strobh.* 570; 2 *Kent* 154; *Tyler Inf. & C.* 396, 513. The scroll here was a sufficient seal. 7 *S. C.* 153; 8 *Id.* 129. The office copy is not conclusive, and cannot negative the presumption that the magistrate affixed his seal. 14 *Pet.* (*U.S.*) 448; 1 *Greenl. Evid.* 127. If no seal, it would not have been recorded. Mrs. McLaurin received the money, and the land cannot be recovered without a repayment of this

money. The concurrent finding of referees and Circuit judge is manifestly against the weight of the evidence. The acknowledgment of payment in the deed may not be contradicted. 2 *Hill Ch.* 335. Payment is presumed from the great lapse of time. 1 *Hill Ch.* 376; 3 *Strobh.* 448. [After commenting on the evidence, counsel continued.] These facts operate as an estoppel. 51 *N. H.* 287; 13 *Wall.* 233; 2 *Sm. Lead. Cas.* 743–754; 4 *S. C.* 45; 1 *Story Eq.* § 385; 11 *Rich. Eq.* 574. This doctrine of estoppel applies to married women and infants. 79 *Ill.* 164; 24 *Ind.* 385; 6 *Wait Ac. & Def.* 686; 2 *Rich. Eq.* 120.

*Messrs. Haynsworth & Cooper*, contra.

A married woman was incapable of contracting, and could bind herself only to the extent and in the manner authorized by statute. 5 *Rich.* 38; 14 *Rich. Eq.* 289; 2 *Kent* 168. The act of the legislature was not here complied with. 3 *Hill* 199; 11 *Rich.* 121; 2 *Mill. Const. R.* 12. A power must be strictly observed. 1 *Sugd. Pow.* 210–245; *Sm. R. & P. Prop.* 252; *Stark. Ev.* 508. Powers under a statute are more strict. 1 *Story Eq.* § 96. The two transactions here were wholly distinct. And there is no seal affixed by the officer. 9 *Rich. Eq.* 34. Independent of the statute, the deed was utterly void. 17 *Johns.* 167; 2 *Kent* 168. No recital in this improperly executed deed could affect her; her recital of payment cannot bind her. 11 *Rich.* 121. The testimony shows that it was not paid. But if paid, neither she nor her heirs would be estopped; otherwise the safeguards of the statute would be effectually destroyed, and the inheritance of a married woman might be conveyed away even without the husband's knowledge. 5 *Rich. Eq.* 439; 4 *Sand.* 374; *Big. Estop.* 443. McLaurin was a competent witness to the conversation between his wife and Chandler. 11 *S. C.* 49; 9 *Id.* 279; 3 *Id.* 423; 26 *N. Y.* 264; 33 *How. Pr.* 347.

January 16th, 1882. The opinion of the court was delivered by

McIver, A. J. This was an action to recover possession of

real estate, the title to which, it was conceded, was at one time in Mrs. Agnes D. McLaurin. The plaintiffs claim as heirs-at-law of Mrs. McLaurin, and the defendants, who are the heirs-at-law of Isaac J. Chandler, claim under an alleged conveyance from her to him. The land in question being the estate of inheritance of Mrs. McLaurin prior to her marriage with the defendant, D. B. McLaurin, his interest in it was sold, after the marriage, under executions against him, and bought by said Chandler, who took a deed for the same from the sheriff dated January 4th, 1840.

On January 25th, 1841, Mrs. McLaurin, while still a *feme covert*, executed a paper purporting to be a deed conveying the tract of land in question to the said Chandler. This paper is in the usual form of a conveyance of real estate, with covenant of warranty, and recites, as a consideration, " the sum of one thousand nine hundred and eleven dollars to me paid or secured to be paid by Isaac J. Chandler." There is nothing in the paper indicating that Mrs. McLaurin was at the time a married woman, and no allusion is made to the fact that her husband's interest in the land had been previously sold by the sheriff and bought by Chandler, but, on the contrary, it appears to be simply the independent deed of a *feme sole*. Upon this instrument there is endorsed a certificate signed by Mrs. McLaurin and by Mason Remes, one of the justices of the quorum, substantially in the form prescribed by the act of 1795, for the renunciation of the wife's inheritance, with the important exception, however, that it contains no declaration " that she did, at least seven days before such examination, actually join her husband in executing such release." Whether this certificate was under the seal of the justice is one of the questions of fact in the case.

Two defenses were set up : 1. That Chandler took a legal title under the papers above stated. 2. That if the court should hold that there was no valid release of Mrs. McLaurin's estate of inheritance, then the payment of the purchase-money, acknowledged by the paper purporting to be the deed of Mrs. McLaurin, operates as an equitable estoppel, and prevents her and those who claim under her as heirs-at-law from disputing the title of Chandler, under whom the defendants claim.

The case was referred to three referees " to hear and determine

the whole issues in the action," and they made a report finding, in substance, as matters of fact: 1. That the certificate of the justice was not under seal. 2. That the consideration mentioned in the deed had not, in fact, been paid ; and, as matter of law, that the estate of Mrs. McLaurin had never been conveyed to Chandler, and that upon the termination of the coverture by her death, her estate descended to the plaintiffs as her heirs-at-law. They also found that the purchase-money mentioned in the deed having never, in fact, been paid, there was no foundation for the equitable estoppel insisted upon by the defendants. Accordingly they found that the plaintiffs were entitled to recover the land described in the complaint, with five dollars damages, and, also, the costs of the case. This report, upon exceptions thereto, was heard by the Circuit judge, who overruled the exceptions and confirmed the report of the referees, and from his judgment this appeal has been taken.

The questions raised by the appeal are: 1. As to the sufficiency of the alleged release of inheritance. 2. As to the equitable estoppel. 3. As to the competency of certain testimony, of which a more particular statement will hereinafter be made.

As the law stood at the time of the transactions now brought in question, there can be no doubt that a married woman was not capable of binding herself by deed unless vested with power so to do by some act of the legislature or by some will or deed, and then only in the manner and to the extent prescribed by such act, will or deed. *Brown* v. *Spann*, 2 *Mill Con. R.* 12 ; *Hays* v. *Hays*, 5 *Rich.* 38. These and other cases cited in respondent's brief show with what rigid exactness our courts required that all the provisions of the statute providing the mode by which a married woman might release her inheritance in real estate should be complied with. As is said in *Pitts* v. *Wicker*, 3 *Hill* 199: "The right of inheritance of a married woman is protected with jealous vigilance by the law. She cannot be deprived of it but by a scrupulous adherence to the statute providing the mode in which a married woman may part with her inheritance in land." The real inquiry, therefore, in this case is whether the papers claimed to operate as a release of Mrs. McLaurin's inheritance are in compliance with the act of 1795 (5

*Stat.* 257). That act provides, amongst other things, that a wife may bar herself of her inheritance " by joining with her husband in a release to the purport of the one hereinbefore prescribed," provided she will go before some judge or justice and declare, amongst other things, " that she did, at least seven days before such examination, actually join her husband in executing such release," and that a certificate to this effect signed by the woman and under the hand and seal of the judge or justice " shall be endorsed on the release, or contained in a separate instrument of writing to the same effect."

It is very manifest that the terms of this act were not complied with. The wife did not *join her husband* in executing the release which is expressly required by the act, and the certificate does not contain the declaration of the wife, which the act likewise expressly requires, " that she did, at least seven days before such examination, *actually join her husband* in executing such release," and indeed could not, consistently with the fact, contain any such declaration. There is not even the semblance of any concurrence of action on the part of husband and wife in conveying away *her* estate. The paper purporting to be a deed, signed by Mrs. McLaurin, makes no allusion to her husband whatever. It does not even purport to be the deed of a *married* woman, but, on the contrary, appears on its face to be the deed of a *feme sole*. It cannot be connected with the deed from the sheriff conveying the interest of her husband, for it does not even allude to such a conveyance. The two papers purport to convey separate and distinct interests—one the interest of the husband, the other the interest of the wife—and there is nothing whatever indicating any connection between them.

In *Page* v. *Page,* 6 *Cush.* 196, citing *Powell* v. *Monson,* 3 *Mason* 347, and *Shaw* v. *Russ,* 2 *Shep.* 432, it was held that the deed of a married woman, executed *by her alone,* relinquishing her dower in land previously conveyed by her husband, by his separate deed, did not bar her of her dower. And although this was a case of dower, yet as the statutes of Massachusetts prescribing the mode of releasing dower are very much the same as our statute in reference to the mode of releasing inheritance— requiring the wife *to join with her husband* in executing the deed—

the principles there decided would apply to the case now under consideration. The paper purporting to be the deed of Mrs. McLaurin must, therefore, be regarded as a nullity.

There is also another fatal objection to the alleged release of inheritance. The act expressly requires that the certificate shall be under the hand *and seal* of the justice, but the fact as found by the referees and by the Circuit judge, is that there was no seal affixed to the name of the justice, and we see no ground to impeach such finding of fact. In addition to the fact that the act expressly requires that the certificate shall be under seal, it has been distinctly decided that the want of a seal is fatal to the validity of the release. *McCreary* v. *McCreary*, 9 *Rich. Eq.* 34.

As to the equitable estoppel relied upon as a defense, it would be quite sufficient to say that the fact upon which it is based, viz., the payment of the purchase-money, has been found against the appellants by the referees, and their finding has been concurred in by the Circuit judge. This, according to the well-settled rule of this court, is conclusive here, unless such finding is without any evidence to support it, or is manifestly against the weight of the evidence. It certainly cannot be said that there was no evidence to support the finding, and we cannot say that it is manifestly against the weight of the evidence. We may add, however, that even if this fact were established we do not think that it would work an estoppel. For, as was well argued by respondent's counsel, such a proposition, if adopted as a rule of law, would effectually destroy all the safeguards provided by statute for the protection of the rights of married women. The statute prescribes certain formalities which must be observed in order to render the release of a married woman's inheritance valid ; but if the mere fact that the purchase-money has been paid to the married woman be sufficient to divest her or her heirs of the estate, then the provisions of the statute might, in every instance, be very easily defeated, and the protection which the statute was designed to throw around the rights of married women would become a mere delusion, and the provisions of the statute rendered wholly nugatory.

The next inquiry is whether D. B. McLaurin, a party to the action, was a competent witness, under Section 415 of the code,

to testify to a conversation between his wife and Chandler, the deceased ancestor of the defendants. · It will be observed that the exception to the general rule established by that section of the code is " that no party to the action or proceeding   *   *   * shall be examined in regard to any transaction or communication *between such witness* and a person at the time of such examination deceased   *   *   *   as a witness against a party then prosecuting or defending the action as executor, administrator, heir-at-law," &c., when the interest of such witness can in any way be affected by such examination, but it does not preclude a party from testifying to a transaction or communication between such deceased person and another.   Hence, while D. B. McLaurin would not · have been competent to testify as to any transaction or communication *between himself* and Chandler, the terms of the statute do not prevent him from testifying as to a conversation between his wife and Chandler.   *Roe* v. *Harrison*, 9 *S. C.* 279 ; *Hughey* v. *Eichelberger*, 11 *S. C.* 49.   It is clear, therefore, that there was no error in admitting the testimony of D. B. McLaurin as to what passed between his wife and Chandler.

The only remaining inquiry is whether there was error in excluding the deposition of Henry Spann, taken by the clerk under the act of February 15th, 1872, (15 *Stat.* 41.)   It seems that the testimony of this witness had been taken by the clerk, under that act, some time before the hearing by the referees. At that hearing, Spann was present, and was examined and cross-examined orally, and after the conclusion of the examination the defendants offered in evidence the deposition of Spann taken before the clerk, which, upon objection, was ruled inadmissible upon the ground that the testimony of the witness, taken *ore tenus*, superseded the deposition of the witness taken by the clerk. This ruling seems to be in accordance with the rule in regard to testimony taken *de bene esse*, but this deposition was not so taken ; but, on the contrary, it was taken under the provisions of a special statute, and we must look alone to the provisions of that statute for the rule to govern us in regard to such testimony. The statute, after providing for taking the deposition of *any* witness, not simply such as could have been examined *de bene esse* under the old law, declares as follows : " And the deposi-

tions so taken shall be certified by the clerk before whom such examination was had, and shall be read in evidence at the trial of the said cause or proceeding, subject, nevertheless, to the right of either party to require the personal attendance and *viva voce* examination of the witness or witnesses at the trial of said cause or proceeding." Under the imperative language of this statute we think the defendants had the right to have the deposition of Spann read in evidence at the trial, which, however, did not preclude the *viva voce* examination of the witness if either party desired it. The statute does not assimilate the taking of such depositions to the taking of testimony *de bene esse*, but, on the contrary, expressly requires that such depositions "*shall be read in evidence at the trial*," with the privilege to either party to have the witness examined *ore tenus*, if his attendance can be procured without delaying the proceedings.

But, while there was error in this respect, we think it was wholly immaterial and that it could not affect the result. For, as we have determined that the alleged release of inheritance by Mrs. McLaurin was an absolute nullity, and that neither she nor those who claim under her would be estopped by the payment of the purchase-money to her, even if such fact had been fully proved, we cannot conceive how the testimony improperly excluded could affect the result. This, therefore, affords no ground for reversing the judgment below. *Susong* v. *Vaiden*, 10 *S. C.* 247.

The judgment of this court is that the judgment of the Circuit court be affirmed.

SIMPSON, C. J., and McGOWAN, A. J., concurred.